1   WRIGHT, FINLAY & ZAK, LLP
2   T. Robert Finlay, Esq., SBN 167280
    Nicholas G. Hood, Esq., SBN 238620
3   4665 MacArthur Court, Suite 280
4   Newport Beach, CA 92660 *(Sam/Pleadings/MTD to FAC)*
    Tel: (949) 477-5050; Fax: (949) 477-9200
5   rfinlay@wrightlegal.net; nhood@wrightlegal.net
6
7   Attorneys for Defendants, AMERICAN HOME MORTGAGE SERVICING,
    INC. and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
8   FOR THE CERTIFICATEHOLDERS OF SOUNDVIEW HOME LOAN TRUST
9   2006-OPT3, ASSET-BACKED CERTIFICATES, SERIES 2006-OPT3

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12
13   JERRY SAM AND MELANIE      ) Case No. CV09-02177-LKK-KJM
     SAM,                       ) *Assigned for all purposes to the*
14                              ) *Honorable Judge Lawrence K. Karlton*
15          Plaintiff,          )
                                ) **NOTICE OF MOTION AND MOTION**
16                              ) **TO DISMISS PLAINTIFFS' FIRST**
17                              ) **AMENDED COMPLAINT FOR**
     vs.                        ) **FAILURE TO STATE A CLAIM**
18                              ) **UPON WHICH RELIEF CAN BE**
19                              ) **GRANTED AND TO STRIKE**
                                )
20   AMERICAN HOME MORTGAGE     ) **[*FRCP*, Rules 12(b)(6), (f)]**
21   SERVICING, INC., ET AL.    )
                                ) Hearing
22          Defendants.         ) Date:  January 11, 2010
23                              ) Time:  10:00 a.m.
                                ) Ctrm.: 4
24                              )
25                              ) *[Filed Concurrently with (Proposed)*
                                ) *Order]*
26   _____)
27
28                              -1-
     _____
                 **MOTIONS TO DISMISS & TO STRIKE**

1  **TO THE HONORABLE COURT AND ALL PARTIES AND THEIR**
2  **ATTORNEYS OF RECORD, IF ANY:**
3    **PLEASE TAKE NOTICE** that on January 11, 2009, at 10:00 a.m. in
4  Courtroom 4, of the above-captioned Court located at 501 I Street, No. 4-2000,
5  Sacramento, CA 95814, Defendants, AMERICAN HOME MORTGAGE
6  SERVICING, INC. ("AHMSI") and DEUTSCHE BANK NATIONAL TRUST
7  COMPANY, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF
8  SOUNDVIEW HOME LOAN TRUST 2006-OPT3, ASSET-BACKED
9  CERTIFICATES, SERIES 2006-OPT3 ("Deutsche") (collectively "Defendants"),
10 by and through their attorneys of record, Wright, Finlay & Zak, LLP, will move
11 this Court for an Order dismissing them from the First Amended Complaint
12 ("FAC") of Plaintiffs, JERRY SAM and MELENIE SAM (collectively
13 "Plaintiffs"), pursuant to the *Federal Rules of Civil Procedure* ("*FRCP*"), Rule
14 12(b)(6) for failure to state a claim upon which relief can be granted. Such motion
15 will be brought on the grounds that, after reviewing the non-conclusive allegations
16 of the FAC, Plaintiffs have failed to plead essential facts which give rise to their
17 claims and/or the claims are barred **(1)** on their face and/or **(2)** as a result of matter
18 which may be judicially noticed by the Court and/or through documents that can
19 be appropriately considered by the Court in ruling on the Motion to Dismiss.
20   **PLEASE TAKE FURTHER NOTICE** that Defendants also move this
21 Court pursuant to *FRCP*, Rule 12(f) for an Order striking Exhibit "F" from the
22 FAC in its entirety as it is impertinent, scandalous and immaterial, and only
23 serves to prejudice Defendants.
24   These Motions are based upon this Notice of Motions and Motions, the
25 supporting Memorandum of Points and Authorities set forth below, the Request
26 for Judicial Notice previously served and filed on September 25, 2009 as
27 ///
28 ///

-2-

---

**MOTIONS TO DISMISS & TO STRIKE**

1        Attachment # 1 to Docket No. 12, the complete files and records in this

2    action, the oral argument of counsel, if any, and such other and further evidence

3    as the Court might deem proper.

4                                   Respectfully submitted,

5                                   WRIGHT, FINLAY & ZAK, LLP

6

7    Dated:  November 6, 2009          By:   */s/ Nicholas G. Hood*

8                                   T. Robert Finlay, Esq.

                                   Nicholas G. Hood, Esq.

9                                   Attorneys for Defendants, AMERICAN

10                                 HOME  MORTGAGE SERVICING, INC.

                                 and  DEUTSCHE BANK NATIONAL

11                                 TRUST COMPANY, AS TRUSTEE FOR

12                                 THE  CERTIFICATEHOLDERS OF

                                 SOUNDVIEW HOME LOAN TRUST

13                                 2006-OPT3, ASSET BACKED

14                                 CERTIFICATES, SERIES 2006-OPT3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs bring the present Action in an attempt to extinguish their unpaid home loan debt and keep their home for free. Unfortunately for Plaintiffs, their action is neither supported in fact nor law. Plaintiffs contend the Truth-In-Lending Act, Real Estate Settlement Procedures Act, Unfair Competition Law and the Rosenthal Fair Debt Collection Practices Act have been violated, but such claims contradict the true facts of this matter and applicable governing law. Also, Plaintiffs' claims for slander of credit and title, as well as Breach of the Implied Covenant of Good Faith and Fair Dealing similarly fail. As set forth below, Plaintiffs' Action is entirely without merit and, as such, the Motion to Dismiss should be granted without leave to amend as this is Plaintiffs' second failed attempt at pleading a valid claim against Defendants.

## II. STATEMENT OF FACTS

On March 6, 2006, Plaintiffs executed a promissory note (the "Loan" or "Note") in an amount of $488,000.00 in favor of the original lender PROFFER FINANCIAL ("PROFFER"), in order to refinance their home (hereinafter the "Property")[1]; the Note was, and is, secured by the Property via a recorded Deed of Trust.[2] Subsequent to the origination of the Note, AHMSI became, and remains, the present **loan servicer** of the Note on behalf of its present beneficiary.[3]

Plaintiffs allege that on February 3, 2009, they sent, via their agent David Pereira of Mortgage Litigation Consultants, a "Qualified Written Request" (the "QWR") under the Real Estate Settlement Procedures Act ("RESPA") to PROFFER and AHMSI.[4] While altogether disputed, Plaintiffs claim that the

---

[1] FAC ¶ 16; Request for Judicial Notice previously served and filed as Attachment # 1 to Docket No. 12 ("RJN"), Exhibit "1".
[2] RJN, Exhibit "1"; FAC, Exhibit "A".
[3] FAC ¶ 121.
[4] FAC ¶ ¶ 29-110, and Exhibit "B" thereto.

-1-

Case 2:09-cv-02177-LKK -KJM   Document 19   Filed 11/06/09   Page 5 of 24

1   "QWR" rescinded the Note under the Truth-In-Lending Act ("TILA") and
2   demanded certain documents regarding the Loan, in which Plaintiffs allege that a
3   timely response was never received.[5]

4        On April 21, 2009, after the Plaintiffs were in default of the Loan in the
5   amount of $18,008.95, a Notice of Default was recorded against the Property's
6   title.[6] Shortly thereafter, on or about April 24, 2009, in what seemingly was a
7   response to the Notice of Default, Plaintiffs filed for Chapter 7 Bankruptcy
8   protection.[7] Interestingly, within their Bankruptcy Petition, Plaintiffs expressed
9   their intention to **affirm the debt under the Note**, to which they now
10  contradictorily contend was rescinded some two months *prior* to the filing of
11  bankruptcy.[8] On or about June 3, 2009, Deutsche filed a Motion for Relief from
12  Stay in the Bankruptcy Court, seeking to leave to continue with the foreclosure of
13  the Property.[9] This prompted Plaintiffs, on June 16, 2009, to amend their
14  Bankruptcy schedules to conveniently include, among other things, a potential
15  lawsuit for TILA violation and rescission.[10] Plaintiffs then filed a Motion to
16  Compel Abandonment on July 13, 2009, in which they requested leave to file suit
17  for TILA violations.[11] Subsequently, the Bankruptcy Court **granted** Deutsche's
18  Motion for Relief from Stay on July 28, 2009[12] and **denied** Plaintiffs' Motion to
19  Compel Abandonment of the Property on August 27, 2009.[13]

20       Presumably out of fear of foreclosure of the Property despite their
21  bankruptcy filing, Plaintiffs filed the present Action to unjustifiably seek
22  rescission relief under TILA that is not available to them. Specifically, Plaintiffs
23  demand rescission of the Note and its Deed of Trust under 15 U.S.C. § 1635's

24

---

25  [5] *Id.*
26  [6] RJN, Exhibit "2".
    [7] RJN, Exhibit "7".
27  [8] RJN, Exhibit "4."
    [9] RJN, Exhibit "7."
28  [10] RJN, Exhibit "8."
    [11] RJN, Exhibit "5."
    [12] RJN, Exhibit "6."
    [13] RJN, Exhibit "8" at Docket No. 36 on pg. 5 thereto.

-2-

MOTIONS TO DISMISS & TO STRIKE

1    extended rescission period based on the allegation that Plaintiffs did not receive

2    two completed copies of the Notice of Right to Cancel at the time the Loan's

3    origination closed. In addition to rescission under TILA, Plaintiffs also believe

4    they are entitled to relief provided by California's Unfair Competition Law (*Bus.*

5    *& Prof.* § 17200 et seq.) (the "UCL"), RESPA (12 U.S.C. § 2605), California's

6    Fair Debt Collection Practices Act (*Civil Code* § 1788 et seq.) ("RFDCPA"), and

7    for damages caused by alleged slander of title and credit, and breach of the

8    implied covenant of good faith and fair dealing.

9        Defendants moved to dismiss Plaintiffs' original complaint, but before the

10   matter could be heard before the Court, Plaintiffs opted to amend their pleadings

11   and filed the FAC. The FAC and the original complaint are very similar, except

12   the FAC has added the additional causes of action for slander of title and credit,

13   and dropped the original complaint's claim for violation of Federal Fair Credit

14   Reporting Act. Regardless, Plaintiffs have wholly failed to state a claim upon

15   which relief can be granted in the FAC.

16                           **III.   DISCUSSION**

17   **A.    The Standards to Be Applied To a Motion To Dismiss.**

18       It is well-established that a complaint may be dismissed pursuant to *FRCP,*

19   Rule 12(b)(6) if it appears beyond doubt that plaintiff can prove no set of facts in

20   support of its claim which would entitle it to relief.[14] A complaint may be

21   dismissed as a matter of law under *FRCP,* Rule 12(b)(6) for (a) lack of a

22   cognizable legal theory or (b) insufficient facts under a cognizable legal claim.[15]

23   "[F]actual allegations must be enough to raise a right to relief above the

24   speculative level"[16] and "more than labels and conclusions, and a formulaic

25   recitation of the elements of a cause of action" must be alleged.[17] When ruling on

26

27

[14] *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

28   [15] *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984); see generally *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).
[16] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).
[17] *Id.*

**MOTIONS TO DISMISS & TO STRIKE**

1 a motion to dismiss, conclusory allegations are disregarded[18] and the court may

2 not "supply essential allegations of the claim that were not initially pled."[19]

3      Also, documents integral to a plaintiff's claims *may be attached* to a motion

4 to dismiss because plaintiff is obviously aware of their contents and it prevents

5 "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting

6 reference to documents upon which their claims are based."[20] Likewise, the court

7 does not have to accept alleged facts as true, when they contradict matters subject

8 to judicial notice.[21] Further, "...when the exhibits contradict the general and

9 conclusory allegations of the pleading, the exhibits govern."[22]

10 **B.      The FAC Fails to State a Claim Upon Which Relief Can be Granted**.

11      **1.      Plaintiffs' TILA allegations are fabricated and legally inept.**

12      Plaintiffs' First Cause of Action for TILA violations is predicated on two

13 theories: (a) Plaintiffs did not receive two completed copies of the Notice of Right

14 to Cancel and thus, have 3 years from the date the loan was consummated to

15 rescind, and (b) AHMSI failed to identify the owner of the Loan per 15 U.S.C. §

16 1641(f). As discussed below, both theories fail.

17           **a.      *Completed Notices of Right to Cancel Were Delivered to***

18                 ***Plaintiffs.***

19      As Exhibit "1" hereto demonstrates, Plaintiffs *each signed* a <u>completed</u>

20 copy of the Notice of the Right to Cancel for the Loan. This **executed and**

21 **completed** Notice of the Right to Cancel states, in pertinent part: "...THE

22

23 _____

24 [18] *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir. 1987).
[19] *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

25 [20] *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); see also *Sumner Peck Ranch v. Bureau of Reclaimation*, 823 F. Supp. 715, 720 (E.D. Cal. 1993); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (a "court may consider

26 evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.")

27 [21] *Sears, Roebuck & Co. v. Metropolitan Engraver, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956).

28 [22] *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Van Hook v. Curry*, 2009 WL 773361 * 3 (N.D.Cal. 2009); *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 750, 754 (5th Cir. 2004) (holding that the contents of exhibit attached to pleading trumps inconsistent allegations in that pleading); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *KKK Architects, Inc. v. Diamond Ridge Dev. LLC*, 2008 WL 637602 *3 (C.D.Cal. Mar. 3, 2008).

-4-

**MOTIONS TO DISMISS & TO STRIKE**

1  UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE
2  NOTICE OF RIGHT TO CANCEL...", which creates a rebuttable presumption
3  that Plaintiffs were given Notices of Right to Cancel as required.[23] Plaintiffs omit
4  this fact in their FAC in an attempt to avoid an adverse 12(b)(6) ruling, and the
5  FAC, otherwise fails to plead sufficient facts to rebut the aforesaid presumption.[24]

6  It is common in the mortgage industry for a lender to provide blank copies
7  of all the mortgage documents to the borrower, including Notices of Right to
8  Cancel, for review several days prior to the execution date, whereby the Notice of
9  Right to Cancel will be completed in handwriting on the day it is given to the
10  borrowers (i.e. "the date you [the Plaintiffs] signed your loan documents")[25]. This
11  is supported by the fact that Exhibit "A" to the FAC is an *unsigned* copy of the
12  Note **and** Deed of Trust. Thus, Plaintiffs' right to rescind lapsed on March 10,
13  2006, or three *days* after they received the TILA disclosures.

14  The Court may consider Exhibit "1" hereto since Plaintiffs are omitting
15  reference to this document in an attempt to avoid dismissal under *FRCP*, Rule
16  12(b)(6), the document is essential and central to the validity of Plaintiffs' claims,
17  and its authenticity is not in dispute.[26]

18  ### b.   *TILA Rescission Does Not Apply to AHMSI.*

19  Plaintiffs' direct their rescission claim against AHMSI, however, they admit
20  that AHMSI "...at all relevant times to this Complaint...was acting as a loan
21  servicer..."[27] 15 U.S.C. § 1641(f)(1) plainly states that a servicer is not an
22  "assignee", nor a defined "creditor",[28] unless the servicer "is or was the owner of
23  the obligation". The FAC does not allege that AHMSI "is or was the owner of the

24
25
26

27  [23] Exhibit "1" hereto (emphasis in original); see 15 U.S.C. § 1635(c).
    [24] See Plaintiffs' sparse allegations limited to FAC ¶ ¶ 31, 73.
28  [25] See Exhibit "1" hereto; FAC, Exhibit "C".
    [26] See *Parrino*, 146 F.3d at 706; *Sumner Peck Ranch* , 823 F. Supp. at 720; *Marder*, 450 F.3d at 448.
    [27] FAC ¶ 121.
    [28] 15 U.S.C. § 1602(f).

MOTIONS TO DISMISS & TO STRIKE

1 obligation", and Plaintiffs' claim that AHMSI is liable under common law agency

2 principles has no application to this TILA claim.[29]

3         **c.**    ***Plaintiffs 'Purported Rescission Notice is Invalid and***

4             ***Untimely.***

5       Assuming, *arguendo*, that Plaintiffs were entitled to rescind under TILA's

6 extended rescission period – which they are not– the Plaintiffs' purported

7 "rescission notice" is defective and ineffectual. 15 U.S.C. § 1635(a), 12 C.F.R. §

8 226.23(a)(2), Appendix H to Part 226- Closed-End Credit Transactions at Model

9 Form H-8, and FAC paragraph 71 each demonstrate that a borrower's exercise of

10 the right to rescind must be in writing and be an **affirmative unconditional**

11 **statement of rescission**, such as **"I WISH TO CANCEL."** Here, Plaintiffs'

12 supposed "rescission notice" contains the following contradictory and conditional

13 language:

14            "**If** you reject our settlement or we do not come to a

15            resolution…Mr. and Mrs. Sam hereby rescinds the above
           referenced loan."[30]

16

17       Such language is not an affirmative statement of rescission, but merely a

18 threat to rescind if the Note is not modified. Plaintiffs concede the ineffectiveness

19 of their so-called notice to rescind by admitting at paragraphs 24-27, 51 and 62

20 that the promissory note and deed of trust *automatically* become void upon

21 mailing of a proper and timely notice to cancel. Logically, if the "QWR" letter

22 was an effective notice of rescission – which it is not - then the Note and Deed of

23 Trust would *automatically* be void upon mailing, leaving no ability for anyone to

24 investigate a modification of the Loan as requested in the "QWR" letter.[31] Thus,

25 by *conditioning* the so-called notice of rescission upon refusal of Plaintiffs' Loan

26 modification offer, and even asking for a "counter proposal" from AHMSI,

27

28

---

[29] See 15 U.S.C. § 1641(f).
[30] FAC, Exhibit "B" at pg. 2.
[31] 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(a)(2), (d).

**MOTIONS TO DISMISS & TO STRIKE**

1  Plaintiffs did _not_ deliver a valid notice of rescission. If anything, Plaintiffs
2  *intended* or *wished* to retain the Loan and have it modified, not to have it
3  rescinded. Plaintiffs' request that the "QWR" letter be interpreted as a valid notice
4  of rescission would defeat the purpose of TILA, which is to return the parties to
5  status quo as if the loan was never made; not to permit a borrower to *threaten*
6  rescission in order to gain a more favorable loan.

7      In addition, Plaintiffs' *judicially admitted* before the Bankruptcy Court on
8  April 24, 2009 – some two months after the so-called notice of rescission and a
9  month *after* the TILA statute of repose expired-  that the Loan was valid, viable
10  and _not_ rescinded, when they stated in their Bankruptcy Petition **their intent to**
11  **reaffirm the Note's debt.**[32] As an afterthought, and after the statute of repose to
12  rescind expired – assuming arguendo Plaintiffs were privy to the extended period -
13  Plaintiffs amended their Bankruptcy schedules approximately two months after
14  filing for bankruptcy to include, as an asset, the TILA Rescission claim.
15  Coincidentally, said Amendment and the subsequent Motion to Seek
16  Abandonment of the Property occurred shortly after Deutsche moved for relief
17  from stay to foreclose.[33] Thus, excluding the ineffective "QWR" letter and
18  assuming Plaintiffs had an extended right to rescind, Plaintiffs did not provide a
19  written notice of rescission until filing the present action nearly six (6) months
20  *after* the statute of repose to rescind expired.[34]

21          d.    ***The TILA Rescission Fails for Lack of Tender.***

22      Regardless of the above, Plaintiffs' TILA Rescission claim is also defective
23  for a lack of tender. Assuming that a TILA violation occurred *and* Plaintiffs
24  properly rescinded –which is absolutely untrue, when a loan is rescinded under
25  TILA, "… the obligor _shall_ tender the property to the creditor..."[35] Although TILA
26
27
28

---

[32] RJN, Exhibit "4".
[33] RJN, Exhibit "7".
[34] 15 U.S.C. § 1635(f); the Loan was consummated March of 2006, making an extended rescission period, if any, viable until March of 2009.
[35] 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(3).

1  describes a process where the lender's tender triggers the borrower's obligation,
2  15 U.S.C. § 1635(b) clearly states: "[t]he procedures prescribed by this subsection
3  [15 U.S.C. §1635(b)] shall apply **except when otherwise ordered by a court.**"
4  (Emphasis Added.) This caveat is reasonable since many homeowners, such as
5  Plaintiffs, are seeking rescission under TILA pursuant to the three (3) year
6  extended time period in order to avoid foreclosure, **when no TILA violation has**
7  **occurred**.
8          The 9th Circuit has acknowledged this safety valve by holding that prior to
9  ordering rescission based on a lender's alleged TILA violations, a court may
10  require borrowers to <u>prove ability to repay</u> loan proceeds.[36] This is because a
11  plaintiff is "…clearly not entitled to a modification of the existing loan
12  terms…[r]escission is not a means to create highly favorable loan terms for the
13  party seeking rescission."[37] Simply, a plaintiff must factually allege their
14  *willingness* and *ability* to tender the outstanding principal amount of the
15  underlying loan in order to state a claim for TILA rescission,[38] as the equitable
16  goal of rescission under TILA is to <u>restore the parties to the status quo ante</u>.[39]
17  Without Plaintiffs' tender, rescission under TILA is an empty remedy, not capable
18  of being granted by a Court of law.
19          Plaintiffs conclusively claim they are "ready, willing and able to tender" on
20  the one hand, but then admit their ability to tender was purportedly "harmed" by
21  Defendants. Plaintiffs' conclusive allegation of tender is speculative at best and
22  must be disregarded on this motion. Plaintiffs will have to tender nearly a half of
23  million dollars, which they claim will be done through refinancing and family
24  help. Given the Property's value does not meet the principal balance of the Loan
25

26  [36] *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property).
27  [37] *Edelman v. Bank of America Corp.*, 2009 WL 1285858, *2 (C.D. Cal. 2009), citing *Nichols v. Greenpoint Mortg. Funding Inc.*, 2008 WL 3891126, *5 (C.D. Cal. 2008).
28  [38] 15 U.S.C. § 1635(b); *Farmer v. Countrywide Financial Corp.*, 2009 WL 1530973 (C.D. Cal. 2009)("This Court embraces the policy that a plaintiff cannot state a claim for rescission under TILA without at least alleging that she is financially capable of returning the principal of the loan.").
[39] *Am. Mortgage Network v. Shelton*, 486 F.3d 815, 821 (4th Cir.2007).

1  and Plaintiffs have just emerged from bankruptcy, their claims are not only
2  conclusive, but highly speculative. Again, Plaintiffs must tender and TILA
3  rescission is not an avenue to gain a more favorable repayment plan under the
4  Loan; regardless of their attempt blame Defendants for their inability to tender.

5         **e.**    *15 U.S.C. § 1641(f) Was Not Violated by AHMSI.*

6        Plaintiffs also incorrectly assert AHMSI is liable under TILA's 15 U.S.C. §
7  1641 for not providing the name and contact information for the note holder.
8  However, a simple reading of 15 U.S.C. § 1641(f)(2) reveals the identity of the
9  note holder does **not** have to be revealed, but such disclosure is *optional*. Thus,
10 Plaintiffs' contentions are meritless.

11       Further, to the extent that Plaintiffs claim Public Law 111-22 was violated,
12 Plaintiffs admit such law was not effective until May 20, 2009,[40] or approximately
13 four (4) months *after* the "QWR" letter was sent. This law is *not* retroactive.
14 Moreover, Public Law 111-22 only requires disclosure within "30 days after the
15 date on which a mortgage loan is **sold or otherwise transferred or assigned** to a
16 third party...", which does not apply to the facts here.

17        **f.**    *No Claim For TILA Damages is Available.*

18       As discussed above, Plaintiffs have not pled a valid TILA claim. Thus,
19 there is no basis for this cause of action. Additionally, any action under TILA for
20 monetary damages due to non-disclosure in the origination must be brought within
21 one-year from the date of the occurrence of the violation.[41] This limitations period
22 runs from the date of consummation of the transaction,[42] which means "the time
23 that a consumer becomes contractually obligated on a credit transaction." [43] Here,
24 Plaintiffs became contractually obligated under the Note on March 6, 2006, but
25
26

27 [40] FAC ¶ 44.
   [41] 15 U.S.C. § 1640(e).
28 [42] *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1039 (C.D. Cal. 2008) (quoting *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986)); see also Meyer v. Ameriquest Mortg. Co., 342 F.3d 899,902 (9th Cir.2003).
   [43] *Id.* (citing 12 C.F.R. § 226.2(a)(13)).

**MOTIONS TO DISMISS & TO STRIKE**

1    they bring this claim over two (2) years later on August 6, 2009, making it

2    untimely under 15 U.S.C. § 1640(e).[44]

3        **2.   Plaintiff's RESPA Claim is Also Defective.**

4        Plaintiffs allege that their so-called "QWR" letter meets RESPA and, as

5    such, they are entitled to *monetary* damages for not receiving a response. A valid

6    Qualified Written Request under RESPA, however, is a borrower's inquiry into

7    information solely relating to the ***servicing of the loan.***[45] "Servicing" is defined

8    under RESPA as "receiving any scheduled periodic payments from a Borrower

9    pursuant to the terms of any loan, including amounts for escrow accounts…and

10   making the payments of principal and interest and such other payments with

11   respect to the amounts received from the Borrower as may be required pursuant to

12   the terms of the loan."[46] A letter disputing the "validity of the loan and not its

13   servicing" is not a valid Qualified Written Request.[47] Moreover, "[e]ven if

14   defendants failed to respond to a QWR, such failure alone does not substantiate a

15   RESPA claim in that the FAC fails to allege plaintiffs' pecuniary loss to support a

16   RESPA violation."[48]

17       As the FAC's own Exhibit "B" - the "QWR" letter – reveals, Plaintiffs

18   request no information about the Loan's servicing; just its validity and the alleged

19   blank Notice of Right to Cancel. As discussed above, the Exhibit will govern

20   Plaintiffs' conclusive and contrary allegations. Thus, the "QWR" letter is anything

21   but a valid Qualified Written Request. Moreover, Plaintiffs have absolutely failed

22   to allege they incurred any actual damages caused by the purported RESPA

23

24

---

[44] See *Nichols v. Greenpoint Mortgage Funding Inc.,* 2008 WL 3891126 (C.D.Cal. 2008).

25   [45] 12 U.S.C. Section 2605(e)(1)(B) and Regulation X Section 3500.21(e)(2).
     [46] 12 U.S.C. § 2605(6)(i)(3).

26   [47] *Keen v. American Home Mortgage Servicing, Inc.,* 2009 WL 3380454, *7 (E.D. Cal. Oct. 21, 2009), quoting
     *Consumer Solutions REO, LLC v. Hillery,* 2009 WL 2711264 (N.D. Cal. Aug. 26, 2009); *MorEquity, Inc. v.*

27   *Naeem,* 118 F.Supp.2d 885, 900-01 (N.D. Ill. 2000) (the alleged letter was not a valid QWR because it involved "a
     forged deed, and irregularities with respect to recording…but no claim with respect to improper servicing".)

28   [48] *Pickard v. WMC Mortgage Corporation,* 2009 WL 3416134 * 8 (E.D. Cal. Oct. 21, 2009); *Hutchinson v.*
     *Delaware Sav. Bank FSB,* 410 F.Supp.2d 374, 383 (D.N.J. 2006) ("However, alleging a breach of RESPA duties
     alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in
     actual damages.")

**MOTIONS TO DISMISS & TO STRIKE**

violation. Also, there is not a single allegation which would even hint that Defendants are engaged in a pattern or practice of violating RESPA to justify a statutory penalty.[49] Thus, Plaintiffs RESPA claim outright fails.

### 3. Plaintiff's Third Cause of Action Does Not Apply to Foreclosures.

Plaintiffs' Third cause of action claims alleged violations of the RFDCPA, but the FAC fails to allege any specific, non-conclusive, facts demonstrating that AHMSI, or any other defendant, is a "debt collector" or that the RFDCPA was actually violated. Plaintiffs even admit at paragraph 113(a) that AHMSI's "true status is vague and unknown", demonstrating this claim is nothing but speculation. This claim is simply based on the vague and conclusive contentions that AHMSI "repeatedly contacted Plaintiff with phone calls and written letters attempting to collect the debt" after Plaintiffs purportedly requested to cease communications in the "QWR" letter and "[t]hese contacts were outside the scope of those associated with a non-judicial foreclosure nor were they authorized by any other statute".[50] Such a conclusive contentions does not state a claim because *Civil Code* § 1788.14(c) only involves ceasing contact when requested by an attorney, which is not alleged, nor is the author of the "QWR" letter an attorney. As for the RFDCPA's incorporation of the Federal Fair Debt Collection Act's 15 U.S.C. § 1692c(c), that section permits communication even after being requested to cease contact. Plaintiffs have merely conclusively alleged that Defendants were not authorized to communicate, if they communicated at all, which must be discarded on this Motion.

Troubling, however, is that the RFDCPA is the state equivalent of the Federal Act, which does not apply to the "activity of foreclosing on [a] property pursuant to a deed of trust [because that] is not the collection of a debt within the

---

[49] 12 U.S.C. § 2605(f)(1)(B).
[50] FAC ¶ 116.

**MOTIONS TO DISMISS & TO STRIKE**

meaning of the FDCPA".[51] Plaintiffs have not demonstrated how the "Rosenthal Act provides [them] greater substantive protections against [their] mortgage lender."[52] "[T]he law is well-settled ... that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."[53] "Foreclosure on a property as security on a debt is not debt collection activity encompassed by the [RFDCPA]."[54] Thus, Plaintiffs have failed to state a claim under the RFDCPA.

### 4.    The UCL Violation Claim is Defective.

To start, Plaintiffs have failed to allege facts demonstrating they have standing to bring a UCL claim. A plaintiff "must show that (1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising."[55] Aside from standing, in order to bring a claim under the UCL a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue, or misleading advertising,[56] and the claim must be supported by facts described with reasonable particularity.[57] Further, the concept of vicarious liability has no application to actions brought under the UCL; rather, a defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices.[58] In addition, "[a] court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as

---

[51] *Hulse v. Ocwen Fed. Bank, FSB* 195 F. Supp. 2d 1188, 1204 (2002).
[52] *Tina v. Countrywide Home Loans, Inc.,* 2008 WL 4790906 at *7 (S.D. Cal. October 30, 2008);
[53] *Costantini v. Wachovia Mortg. FSB,* 2009 WL 1810122 (E.D.Cal.2009) citing *Hepler v. Washington Mut. Bank, F.A.,* 2009 WL 1045470 at *4, (C.D.Cal.2009), citing *Scott v. Wells Fargo Home Mortg. Inc.,* 326 F.Supp.2d 709, 718 (E.D.Va.2003).
[54] *Champlaie v. BAC Home Loans Servicing, LP,* 2009 WL 3429622 * 18 (E.D. Cal. Oct. 22, 2009).
[55] *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).
[56] *Stewart v. Life Ins. Co. of North America,* 388 F.Supp.2d 1138, 1143 (2005) (citing *Lippitt v. Raymond James Fin. Servs.,* 340 F.3d 1033, 1043 (2003) for its quotation of *Bus. & Prof. Code* § 17200; see *Bus. & Prof. Code* § 17500.
[57] *Khoury v. Maly's of California, Inc.,* 14 Cal.App.4th 612, 619 (1993).
[58] *Emery v. Visa Internat. Service Ass'n,* 95 Cal.App.4th 952, 960 (2002).

-12-

1    one for unfair competition.'"[59] Thus, a UCL claim's validity fatally depends on

2    the fate of antecedent substantive claims.[60]

3       In the present matter, Plaintiffs have absolutely failed to state a UCL claim

4    against Defendants. First, as demonstrated above, Plaintiffs' alleged TILA,

5    RESPA and RFDCPA violations, which are the sole basis of the UCL claim, are

6    entirely fabricated and factually and legally defective, and Plaintiffs have failed to

7    establish standing. Therefore, since the antecedent substantive claims fail, so too

8    must the UCL claim, and Plaintiffs are prohibited from masking their barred TILA

9    claims as UCL claims.

10       Second, while Plaintiffs claim AHMSI "continually engaged in

11    harassment", "invaded the privacy of Plaintiff" and "reported negative credit",

12    there is no factual support or reasonable *particularity*, as required; just improper

13    conclusions. Moreover, as mentioned above, contrary to Plaintiffs' boilerplate and

14    formulaic assertions, the FAC does not contain a TILA violation, nor was a valid

15    Qualified Written Request delivered. Thus, Plaintiffs have entirely failed to plead

16    with reasonable particularity that Defendants have violated any law, engaged in

17    any deception or committed any unfair business act that is in contradiction to an

18    established public policy or that is immoral, unethical, oppressive, unscrupulous

19    or substantially injurious to consumers.[61]

20       For these reasons, Plaintiffs have failed to state a claim upon which relief

21    can be granted.

22      **5.    The Slander Claims Are Invalid.**

23       The Fifth (Slander of Credit) and Seventh (Slander of Title) Causes of

24    Action seek damages for defamation based on allegations that Defendants made

25    false statements to credit reporting agencies regarding Plaintiffs' creditworthiness

26    and impermissibly recorded the Notice of Default, respectively. Defamation is an

27

28

---

[59] *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).
[60] *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).
[61] See *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984).

-13-

1   invasion of the interest in reputation and may be comprised of libel (ordinarily

2   written statements) or slander (ordinarily oral statements).[62] The tort involves (a) a

3   publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has

4   a natural tendency to injure or that causes special damage.[63] "All averments of

5   defamation must be plead with **particularity**."[64] "The words constituting a libel or

6   slander must be specifically identified, if not plead verbatim."[65] Conclusory

7   allegations are insufficient to state a claim and a plaintiff should plead the time,

8   place, content, speaker, and listener of the alleged defamatory matter.[66]

9        As to the Fifth Cause of Action for Slander of Credit, the allegations are

10  entirely insufficient. The claim conclusively alleges that AHMSI "caused to be

11  published with various credit reporting agencies false statements regarding

12  Plaintiff's (sic) creditworthiness without informing that such claims were

13  disputed...[and] when not allowed per law (RESPA as a Qualified Written

14  Response was pending)..."[67] There is absolutely no particularity as to the content,

15  time, place and method of the purported publication. Further, there is no dispute

16  that Plaintiffs defaulted on the Loan, but simply as to whether the Loan was

17  rescinded through the "QWR" letter. As set forth above, the Loan was not

18  rescinded and thus, any statement that the Loan was in default was factually true

19

20

21
_____

22  [62] Civil Code § 44; see Witkin, *Summary of California Law*, Vol. 5 Torts, § 529, p. 782 (West 10th ed. 2005); Rest.2d, Torts §558 et seq.
23  [63] Civil Code § § 45, 46; Rest.2d, Torts §§558, 559; see *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal.App.4th 798, 809 (2002) (there can be no defamation recover without
24  a falsehood).
    [64] *Wiggins v. District Cablevision, Inc.*, 853 F.Supp. 484, 494 (D.D.C. 1994), citing *Hoffman v. Hill and Knowlton,*
25  *Inc.*, 777 F.Supp. 1003, 1005 (D.D.C. 1991); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Vol. 5, § 1309 (1990) ("In libel and slander suits, the **time and place of the publication should be**
26  **specifically stated** in the complaint.").
    [65] *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D. Cal. 1997), quoting *Chabra v. S.*
27  *Monterey County Memorial Hospital, Inc.*, 1994 WL 564566, *6 (N.D.Cal. 1994); see *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979), quoted by *Hoffman*, 777 F.Supp. at 1005 ("...the use of In haec verba
28  pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings.")
    [66] See *Hoffman*, 777 F.Supp. at 1005; *Ridgewells Caterers v. Nelson*, 688 F.Supp. 760, 763 (D.D.C.1988).
    [67] FAC ¶ ¶ 135-136.

**MOTIONS TO DISMISS & TO STRIKE**

1   and could be reported to the credit reporting agencies under Federal and State

2   Credit Reporting Laws.[68]

3        Additionally,

> "…there [is] no evidence that credit information furnisher
> knew consumer debt was false or acted with reckless
> disregard as to its falsity, as required for consumer to establish
> libel claim based on reporting of consumer debt without
> notation that it was disputed; additionally, even if   furnisher
> violated its obligations to report that consumer disputed the
> debt, such failure did not render the information that was
> reported "false" so as to support a libel claim meeting the
> malice standard required under Fair Credit Reporting Act
> (FCRA) provision barring defamation claims against reporting
> agencies that did not act  maliciously."[69]

Therefore, Plaintiffs' Fifth Cause of Action absolutely fails.

With respect to the Seventh Cause of Action for Slander of Title, it is

comprised of one meager sentence that "Defendants have caused to be recorded

various documents including a Notice of Default which has impaired the Plaintiffs

(sic) title…"[70] This allegation does not meet any of the requirements for slander

discussed above. Moreover, slander of title is a sub-set of defamation that consists

of a *false* and *unprivileged* disparagement, oral or written, of the title to real or

personal property, resulting in *actual pecuniary damage*.[71]  The elements of

Slander of Title are the same as those mentioned above, but also include:

disparagement of another's land which is relied upon by a third party and which

results in pecuniary loss.[72] When a defendant's conduct is justified by the

application of an absolute privilege, this cause of action is defeated.[73] In the

context of foreclosure proceedings, *Civil Code* § 2924(d) expressly provides, in

---

[68] 15 U.S.C. § 1681 et seq.; *Civil Code* § § 1785.10 et seq.
[69] *Gorman v. Wolpoff & Abramson, LLP*, 2009 WL 3365928 * 16 (9th Cir. Oct. 21, 2009).
[70] FAC ¶ 157.
[71] *Gudger v. Manton* 21 Cal.2d 537, 541 (1943).
[72] Witkin, *Summary of California Law*, Vol. 5Torts, §642, page *947* (West 10th Ed. 2005).

pertinent part: "All of the following shall constitute **privileged communications** pursuant to Section 47: (1) **The mailing, publication, and delivery of notices as required by this section [2924]**…" [Emphasis added.]

While the claim is conclusive, it only specifically refers to the recording of the Notice of Default; the "other" recorded various documents are not specified. However, the recording of the Notice of Default is statutorily mandated by *Civil Code* §2924(a) in order to effectuate the foreclosure of the Property. Therefore, the recording of the Notice of Default in this matter was a privileged publication. Moreover, the basis of this claim is presumably predicated on the conclusive and defunct contention that the Loan was rescinded prior to the recording of the Notice of Default. As such, since the Loan was *not* rescinded as discussed above and there is no dispute as to the default, the Notice of Default was factually true. Further, there are no allegations as to any "special pecuniary loss or damage" or reliance by a third party, as required. As a result, the Seventh Cause of Action absolutely fails.

### 6.    The Breach of Covenant of Good Faith and Fair Dealing Claim Fails.

Plaintiffs' Sixth Cause of action alleges the breach of the implied covenant of Good Faith and Fair Dealing ("GFFD"). Specifically, they claim that the purported failures to disclose the Notice of Right to Cancel and respond to the "QWR" letter were breaches of GFFD. Yet, "[b]orrower[s] and guarantors of commercial loan[s] [can] not maintain tort cause[s] of action against bank[s] alleging breach of covenant of good faith and fair dealing" because **these "contracting parties do not have fiduciary characteristics."**[74] In addition, not only are all of Plaintiffs' claims factually and legally without merit, as discussed above, but the GFFD is limited to assuring compliance with the *express terms* of

---

[73] *Albertson v. Raboff*, 46 Cal.2d 375 (1956); *California Riviera Homeowners Ass'n v. Superior Court*, 48 Cal.App.4th 1886, 1892 (1996) (recording notice of violation of CC&Rs is absolutely privileged under Civil Code § 47(b)).

[74] *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 728 (1989) (emphasis added).

1   the contract, and cannot be extended to create obligations not contemplated by the

2   contract.[75] "[T]he implied covenant will only be recognized to further the

3   contract's purpose; it will not be read into a contract to prohibit a party from doing

4   that which is expressly permitted by the agreement itself."[76]

5        Here, Plaintiffs' claims seem to be based on obligations, if any, that arise

6   from statutes (e.g. TILA and RESPA requirements), not the *express terms* of the

7   Loan, which is attached as Exhibit "A" to the FAC.[77] Again, this Exhibit will

8   control the conclusive and contrary allegations of Plaintiffs. Moreover,

9   foreclosing on the Property is an express term of the Loan agreement in the event

10  of Plaintiffs' default.       Consequently, the Motion to Dismiss the Complaint's

11  Sixth Causes of Action should be granted without leave to amend.

12  **C.  <u>Motion to Strike</u>**.

13       *FRCP*, Rule 12(f) states: "The court may strike from a pleading an

14  insufficient defense or any redundant, immaterial, impertinent, or scandalous

15  matter." The FAC's Exhibit "F", which is a generalized self-serving article about

16  the author's opinion as to America's loan servicers' motives, is irrelevant and

17  immaterial to this action, and to the Defendants, and serves to be scandalous and

18  prejudicial by implying that Defendants' actual conduct and motives is the same

19  as opined in the article. This article is also without any foundation or authority and

20  thus, should be stricken in its entirety.

21  ///

22  ///

23  ///

24  ///

25

26

27  [75] *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094 (2004); Witkin, Su*mmary of California Law*, Vol. 1 Contracts § 802 p. 895 (West 10th ed. 2005)

28  [76] *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120 (2008).
[77] See *Edelman v. Bank of America Corp.*, 2009 WL 1285858 *3 (C.D. Cal. April 17, 2009) ("The duty to provide a notice of cancellation does not arise from the parties' agreement. Rather, it arises from federal statute" in dismissing a GFFD claim based on TILA violations.)

1

## IV.   CONCLUSION

2       For the foregoing reasons, Defendants respectfully requests that the

3  Honorable Court grant their Motion to Dismiss without leave to amend.

4                                      Respectfully submitted,

5                                      WRIGHT, FINLAY & ZAK, LLP

6

7  Dated:  November 6, 2009            By:   /s/ Nicholas G. Hood

8                                      T. Robert Finlay, Esq.

9                                      Nicholas G. Hood, Esq.
                                       Attorneys for Defendants, AMERICAN

10                                     HOME  MORTGAGE SERVICING, INC.

11                                     and  DEUTSCHE BANK NATIONAL
                                       TRUST  COMPANY, AS TRUSTEE FOR

12                                     THE  CERTIFICATEHOLDERS OF

13                                     SOUNDVIEW HOME LOAN TRUST
                                       2006-OPT, ASSET BACKED

14                                     CERTIFICATES, SERIES 2006-OPT3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

**EXHIBIT 1**

# NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:
03/ /06
Loan Number: 631012337    002101479-0
Borrowers: JERRY SAM and MELENIE SAM

Property Address:    9535 PALAZZO DR
STOCKTON, CA 95212-3519



COMPLIANCE / NOTICE OF
RIGHT TO CANCEL

**YOUR RIGHT TO CANCEL**
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is  3-7-06 ; (i.e., the date you signed your loan documents) or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing,

Name of Creditor    PROFFER FINANCIAL A CALIFORNIA CORPORATION

at         3636 NOBEL DR., SUITE #410
SAN DIEGO, CA 92122

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  3-10-06  (or midnight of the third business day following the latest of three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____                        _____
Date                                                     Consumer's Signature

ON THE DATE LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

Jerry Sam          3/7/06            Melenie Sam          3/7/06
Applicant  JERRY SAM    Date        Co-Applicant  MELENIE SAM    Date

_____    _____    _____    _____
Applicant                  Date        Co-Applicant                Date

_____    _____    _____    _____
Applicant                  Date        Co-Applicant                Date

Page 1 of 1                                                USD0011.wp (02-07-03)

**PROOF OF SERVICE**

I, Steven E. Bennett, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On November 6, 2009, I served the within **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND TO STRIKE** on all interested parties in this action as follows:

[X]     by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Kimberlee A. Rode
Law Offices of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA 95826
**Attorney for Plaintiff**

[ X ]     (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[/ ]      (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission.

[X]     (BY ELCTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

[X]     (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 6, 2009, at Newport Beach, California.

*Ste. E. Bennett*

Steven E. Bennett