Kimberlee A. Rode (State Bar No. 186132)
Law Office of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA  95826
Telephone: (916) 417-4564
Facsimile: (916) 244-7006

Attorney for Plaintiff Jerry Sam and Melenie Sam

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerry Sam and Melenie Sam,<br><br>                 Plaintiff,<br><br>        and<br><br>American Home Mortgage Servicing, Inc.,<br><br>Deutsche Bank  National Trust Company, as<br><br>Trustee for the Certificateholders of Soundview<br><br>Home Loan Trust 2006-OPT3, Asset-Backed<br><br>Certificates, Series 2006-OPT3 and LENDER<br><br>DOE<br><br>                 Defendants. | Case No.:  2:09-cv-02177-LKK-KJM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE**<br><br>[FRCP Rule 12(b)(6),(f)]<br><br>Date:    January 11, 2010<br>Time:   10:00 a.m.<br>Ctrm:   4<br>Judge: Hon. Judge Lawrence K. Karlton |

Plaintiffs, Jerry Sam and Melenie Sam, through their attorney, file this opposition in response to

Defendant's motion to dismiss the Plaintiff's complaint, and state:

**I. INTRODUCTION**

Defendants ask the Court to dismiss the case for a variety of reasons.  Each of these reasons

Plaintiff will address but Plaintiff wishes to clarify that Plaintiff did not file this action in an attempt to

extinguish their debt and keep their home free and clear.  That would be inequitable and Defendants

misconstrue pleadings focused on the statutory scheme of their security interest being void and the possible

impact of a bankruptcy filing.  Plaintiff comes to the Court with a legitimate claim that a controversy exists

and will present this controversy to the court for determination and expects that the court will apply fair and

equitable principles that takes into account both parties.

## II. CLARIFING POINTS RELATED TO BACKGROUND<br>AND SUMMARY OF RELEVANT FACTS

In the introduction of Defendants, they assert that the bankruptcy filing of Plaintiff was in

response to a Notice of Default being filed (MTD Pg. 2, lines 6 and 7).  This is merely a theory of

Defendants and not based on any fact and as such should not be in the "statement of facts".

The entire discussion in their statement of facts regarding why this complaint was filed, "out of fear

of foreclosure of the property" and to "unjustifiably seek rescission relief under TILA that is not available to

them" (MTD Pg. 2, lines 20-22), again, is merely a theory and is not based on any fact.

Plaintiff requests that the entire Statement of Facts presented by the Defendants be stricken as most, if

not all of their State of Facts are theories and not representative of facts in this case.

## III.  APPLICABLE LEGAL STANDARD

Defendant contends that the Plaintiff's complaint fails to state a cause of action in which relief can be

granted.  Generally, such requests are looked upon with disfavor and generally only appropriate when the

Plaintiff can prove no set of facts supporting relief.  Guerrero v. Gates (9th Circuit 2005) 357 F3d 911, 916.

Said motions are rarely granted.  Gilligan v. Jamco Dev. Corp. (9th Circuit 1977) 108 F3d 246, 249.

Federal Rules of Civil Procedure 8(a)(2) require a Plaintiff to state a claim under liberal pleading

requirements.

A complaint need only plead enough facts to state a claim to relief that is plausible on its face.  Bell

Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

A complaint must contain sufficient allegations in the complaint to raise a right of relief above the

speculative level.  Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

## IV.  Argument

**A.     PLAINTIFF'S TILA CLAIMS ARE NOT A FABRICATION NOR LEGALLY INEPT.**

For reasons that Plaintiff cannot comprehend, Defendants contention that the TILA claim is a fabrication is unsupported by the facts in this case.  The rescission notices provided to Plaintiff, which are the only notices every received by Plaintiff are blank where the dates of when the rescission expires (See FAC Ex. C).  In response, Defendants have provided a copy from their file which has dates filled in (MTD Ex. 1).  None of the dates are initialed by the Plaintiffs nor do they appear to be in the writing of either Plaintiff.  Plaintiff disputes the validity of this document as the dates could have been merely inserted at any time after the Plaintiff executed the document.

While they contend this TILA rescission claim is a fabrication, in fact, the existence of Plaintiff's blank rescission notice and Defendants presentation of completed rescission notice in itself creates a true controversy and rebuts their contention that this is a fabrication or legally inept.

**B.     REBUTTABLE PRESUMPTION HAS NOT BEEN OVERCOME BY DEFENDANT AND COMPLETED NOTICES OF RIGHT TO CANCEL WERE NOT PROVIDED PLAINTIFF.**

The legal understanding of the "rebuttable presumption" component Plaintiff's argument is the heart of this case.  Defendants have correctly stated in their papers that the acknowledgement on the original Notice of Right to Cancel does in fact create a rebuttable presumption but Plaintiff contends they misconstrue the impact of the rebuttable presumption.

To be clear, 15 U.S.C. 1635(c) does not state that it is a rebuttable presumption but that it is NO MORE than a rebuttable presumption.

**15 U.S.C. §1635(c) Rebuttable presumption of delivery of required disclosures**

**Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section <u>does no more than create a rebuttable presumption of delivery thereof</u>.**

Black's defines "rebuttable presumption" as:

**In law of evidence, a presumption which may be rebutted by evidence. Otherwise called a "disputable" presumption. It gives particular effect to certain group of facts in absence of further evidence, and presumption provides prima facie case which shifts to defendant the burden to go forward with evidence to contradict or rebut fact presumed.**

As such, Defendants have provided what they purport to be a copy of the original Notice. Plaintiff disputes this document as to being a valid document they executed as having the dates completed and contend it was filled in by someone else after the Plaintiff executed the document, which is Plaintiff's first rebut of the document. But more important, Plaintiff has further rebutted the Notice by providing the actual copies they received in their complaint (FAC Ex. C). This delima has been addressed by several Courts over many years

In the case of <u>Stone v. Mehlberg</u>, 728 F. Supp. 1341 (US: Dist. Court, WD Michigan 1989), the Court made clear that the creditor, when faced with evidence that rebuts the acknowledgement of receipt, they must produce some other evidence that the copies were actually given to the consumer:

**Moreover, even if the "Notice of Right to Cancel" did refer to receipt of two copies by both Kenneth and Delores Stone, the document does not suffice to raise a 1354 jury question whether the Stones in fact received the required papers. Under 15 U.S.C. § 1635(c), the Stones' signatures after the acknowledgement of receipt merely created a rebuttable presumption of delivery to them of two copies of the "Notice of Right to Cancel." The Stones' affidavit testimony rebutted this presumption. Powers v. Sims and Levin Realtors, 396 F.Supp. 12, 22-23 (E.D.Va.1975), aff'd in part and rev'd in part, 542 F.2d 1216 (4th Cir.1976). <u>Following this rebuttal, it is incumbent upon the Mehlbergs, who stand in the creditor's shoes, to produce some positive evidence that delivery of the "Notice of Right to Cancel" copies to the Stones actually did occur.</u> In re Pinder, 83 B.R. 905, 912-14 (Bankr.E.D.Pa.1988). The Mehlbergs have not produced any delivery evidence. Consequently, the Stones have established the absence of a genuine factual issue, and are entitled to judgment as a matter of law.**

In the case of <u>Hawaii Community Federal Credit Union v. Keka</u>, 11 P. 3d 1 (Haw: Supreme Court 2000), the Court made clear that the a mere affidavit by a consumer that they did not receive the copies is sufficient to overcome a summary judgment and created a genuine issue of material fact. Plaintiff has exceeded this requirement by actually providing a copy they received which has the dates omitted:

**TILA provides that "written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). The case law of other jurisdictions is well settled that a debtor's affidavit averring non-delivery is sufficient to create a genuine issue of material fact as to whether the statutory**

**presumption had been rebutted, thereby precluding summary judgment with respect to a claim based upon a debtor's assertion of non-delivery. Stone v. Mehlberg, 728 F.Supp. 1341, 1353-54 (W.D. Mich.1989 & Supp. Opinion 1990); Powers v. Sims & Levin Realtors, 396 F.Supp. 12, 22-23 (E.D.Va.1975) ("congressional 13 policy, as expressed by 15 U.S.C. § 1635(c), precludes granting a creditor summary judgment on the basis of a receipt acknowledgment alone where the [debtors] deny by affidavit that they received the disclosures required by [TILA]"); Cintron v. Bankers Trust Co., 682 So.2d 616, 616-17 (Fla.Dist.Ct.App.1996); Award Lumber & Constr. Co., Inc. v. Humphries, 110 Ill. App.3d 119, 65 Ill.Dec. 676, 441 N.E.2d 1190, 1191-92 (1982) (discussing relevant case law and concluding that, "while an affidavit of non-delivery from defendant in this case would have sufficed to create a material issue of fact, the mere allegation thereof ... is insufficient to rebut the presumption raised by the signed acknowledgment of receipt"). We therefore hold that the Kekas' affidavits and declaration raised a genuine issue of material fact as to whether the Credit Union timely provided the Kekas with the disclosures required by TILA. Having done so, we must, on that basis alone, vacate the circuit court's summary judgment in favor of the Credit Union with respect to Count Four of the Kekas' counterclaim for damages allegedly resulting from the foregoing violation of TILA.**

In the case of <u>Gonzalez v. Wells Fargo Bank</u>, No. C 09-03444 MHP (N.D.Cal. 10-29-2009), the Court stated that the original and the copies with the missing dates was "conflicting and difficult for the court to parse at this stage of the litigation." The Court went on to say, "at the very least, however, Gonzalez has a better than negligible chance of succeeding on the merits of his failure to disclose."

**Defendants have introduced a copy of the Truth-in-Lending-Act Disclosure that Gonzalez admitted to having signed. Gonzalez seeks to rebut the presumption created by that document with sworn affidavit and live testimony that, although he signed the document, he was never provided with a copy. <u>In contrast to Gonzalez's claim regarding the omission of the date his rescission period ended, where Gonzalez submitted copies of the Notice of the Right to Cancel that lacked necessary information, the evidence regarding whether Gonzalez was provided with these other disclosures is conflicting and difficult for the court to parse at this stage of the litigation. At the very least, however, Gonzalez has a better than negligible chance of succeeding on the merits of his failure to disclose claim.</u>**

In <u>Rowland v. Novus Fin. Corp.</u>, 949 F. Supp. 1447 (D.Haw. 01/17/1996), addressing a similar Notice of Right to Cancel issue almost identical to the facts of the case before this court (starting at ¶102):

**TILA provides that written acknowledgement of receipt of disclosures required under Title 15 U.S.C. § 1601 et seq., by a person to whom TILA requires disclosures be given, "creates a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c) (emphasis added). Citing this provision, Defendant contends that the court should grant summary judgment on the issue of whether or not Plaintiff received a dated Notice of the Right to Cancel, since Plaintiff signed and acknowledged receipt of the form on July 1, 1993. In support of its position, Defendant submitted signed and dated copies of the notice, which it contends satisfy the TILA disclosure requirements.**

**Yet although § 1635(c) provides for a rebuttable presumption of delivery, to rebut this presumption the <u>Plaintiff produced evidence of an undated Notice of the Right to Cancel. Due to**

**these conflicting versions of the facts, this court previously found that a triable issue of fact exists as to whether the Plaintiff received a dated copy of the Notice of the Right to Cancel.** See Order Filed September 12, 1995. Accordingly, the court denies Defendant's instant request to grant summary judgment on the issue of whether Plaintiff received an undated Notice and, in turn, whether Plaintiff is entitled to rescission on the basis of this alleged disclosure violation.

In <u>Davison v. Bank One Home Loan Services</u>, No. Civil Action No. 01-2511-KHV (D.Kan. 01/13/2003)[1], the court stated:

**For purposes of defendant's motion for summary judgment, however, plaintiffs have presented sufficient evidence to rebut that presumption.**

In addition, in <u>Kajitani v. Downey Savings and Loan Association, F.A.</u>, No. 07-00398 SOM/LEK (D.Haw. 05/22/2008):

**In keeping with TILA's purpose of protecting consumers, the Ninth Circuit has held that "[e]ven technical or minor violations . . . impose liability on the creditor." Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989) (citations omitted); Semar v. Platte Valley Federal Savings & Loan Association, 791 F.2d 699, 704 (9th Cir. 1986) (same); Riopta v. Amresco Residential Mortgage Corporation, 101 F. Supp. 2d 1326, 1333 (D. Haw. 1999) ("TILA requires exact adherence and minor or technical violations, no matter how inadvertent, automatically allow obligors to invoke various remedies."). Thus, for example, a creditor's failure to deliver the required disclosure notices in a timely manner or in the proper form extends the borrower's rescission period from three days to three years. See 15 U.S.C. § 1635; 12 C.F.R. § 226.23.**

**TILA provides that a borrower's acknowledgment of receipt of the required disclosures only creates a rebuttable presumption of delivery: "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c).**

---

[1] <u>DAVISON v. BANK ONE HOME LOAN SERVICES</u>, No. Civil Action No. 01-2511-KHV (D.Kan. 01/13/2003) (beginning at ¶29) Plaintiffs concede that because they signed acknowledgments that they each received two copies of the right to cancel form and one copy of the TILA disclosure form, TILA provides a rebuttable presumption of delivery.

For purposes of defendant's motion for summary judgment, however, plaintiffs have presented sufficient evidence to rebut that presumption. As explained above, plaintiffs retained their copies of the loan documents in a notebook which they placed in a file cabinet in their home. The documents remained intact from the date of the loan closing on August 27, 1999 until Mrs. Davison removed them from the file cabinet shortly before she met with counsel in late 2001.*fn8 During plaintiffs' meeting with their attorney, they discovered that they had received a total of two copies of the right to cancel form and a total of one copy of the TILA disclosure form. Viewing the evidence in a light most favorable to plaintiffs, a reasonable jury could find that they did not receive a total of four copies of the right to cancel form or a total of two copies of the TILA disclosure form.

**The court has not found, and the parties do not point to, any controlling cases that set forth how a borrower rebuts the presumption of delivery. Instead, Downey, citing to cases from other jurisdictions, argues that the Kajitanis' "mere denial of receipt is insufficient to rebut the presumption of delivery under TILA." Motion at 13.**

**<u>Even if this court were to agree that mere denial is insufficient, the Kajitanis have clearly presented more than their denials of receipt to rebut the presumption here.</u>**

Therefore, Plaintiff contends that they have properly pled that they did not receive the accurate Notice of Right to Cancel and the possession of disclosures different than the Defendant has in their possession leaves the court with a genuine question of fact related to a rebuttable presumption question that should make a Motion to Dismiss improper at this time.

What is genuinely glaring missing from the Defendants Motion to Dismiss is the answer to the real question, "why did Defendant (or their predecessor) even provide an incorrect copy of the Notice of Right to Cancel to the Plaintiff as contained in Exhibit C to the FAC Complaint?"  There can be no justification for them to provide copies of incorrect notices and also correct notices (if such did occur which we dispute) and they are merely trying to hold the Plaintiff accountable for their clear error.  Regardless, as contended in the Plaintiff's complaint, Plaintiff never received the accurate Notice of Right to Cancel, which is supported by Exhibit C to the complaint,  in conjunction with the closing of their loan which gave rise to the extended right of rescission.  In addition, the copy provided by Defendants (MTD Ex. 1) has dates in handwriting not in the hand of the Plaintiffs and is not initialed by the Plaintiff and Plaintiff disputes as being the document they actually executed.

**C.     AHMSI IS LIABLE FOR TILA VIOLATIONS AS THEY HAVE NOT DISCLOSED THEIR PRINCIPAL AS AN AGENT.**

AHMSI contends they have no liability under TILA as servicers are not considered assignees under the statute citing 15 U.S.C. §§1640, 1641.  To that point we agree and did not plead they were liable as assignees in the complaint.  Instead, Plaintiff pled that their liability only applies under agency law, specifically, at §§'s 40, 41, 42, 43, 45, 54.  Generally, an agent is liable for claims against its principal when it has failed to identify its principal.  Until their admission (only discovered in court documents, not by disclosure by AHMSI), which did not include disclosure of who their principal is, they have completely acted

like they were the owners of the obligation and purposely refused to comply with the Plaintiff's Qualified

Written Request under RESPA for the name and address of the owner of the obligation and also requested the

name and address of the owner under 15 U.S.C. §1641.  To be clear, Plaintiff does not consider AHMSI to be

assignees for liability but acting as agents for formerly undisclosed principals which makes them liable under

common law agency and Restatement of Agency 3d.  Undisclosed and Unidentified principals are defined at

§1.04(2) as:

**(2) Disclosed, undisclosed, and unidentified principals.**

**(a) Disclosed principal. A principal is disclosed if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity.**
**(b) Undisclosed principal. A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal.**
**(c) Unidentified principal. A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity.**

Plaintiff contends that LENDER DOE  and/or Deutsche Bank to the First Amended Complaint is or

were an undisclosed principal and now that AHMSI has admitted they are a servicing agent and do not own

the obligation, they still represent an unidentified principal.

Restatement of Agency at §6.07 states that a 3rd party may demand reasonable proof of the principal's

identity:

 **(1) A principal's payment to or settlement of accounts with an agent discharges the principal's liability to a third party with whom the agent has made a contract on the principal's behalf only when the principal acts in reasonable reliance on a manifestation by the third party, not induced by misrepresentation by the agent, that the agent has settled the account with the third party.**
**(2) A third party's payment to or settlement of accounts with an agent discharges the third party's liability to the principal if the agent acts with actual or apparent authority in accepting the payment or settlement.**
**(3) When an agent has made a contract on behalf of an undisclosed principal,  (a) until the third party has notice of the principal's existence, the third party's payment to or settlement of accounts with the agent discharges the third party's liability to the principal;**
**(b) after the third party has notice of the principal's existence, the third party's payment to or settlement of accounts with the agent discharges the third party's liability to the principal if the agent acts with actual or apparent authority in accepting the payment or settlement; and**
**(c) <u>after receiving notice of the principal's existence, the third party may demand reasonable proof of the principal's identity and relationship to the agent.</u> Until such proof is received, the third party's payment to or settlement of accounts in good faith with the agent discharges the third party's liability to the principal.**

Restatement of Agency at §2.05 states that an agent is liable to a 3rd party when the agent, AHMSI

herein, has not taken reasonable steps to ensure that the 3rd party (Plaintiff herein) was properly notified of the

facts that AHMSI was merely an agent:

**A person who has not made a manifestation that an actor has authority as an agent and who is not otherwise liable as a party to a transaction purportedly done by the actor on that person's account is subject to liability to a third party who justifiably is induced to make a detrimental change in position because the transaction is believed to be on the person's account, if
(1) the person intentionally or carelessly caused such belief, or
(2) having notice of such belief and that it might induce others to change their positions, the person did not take reasonable steps to notify them of the facts.**

Restatement of Agency at §2.06 renders the  principal liable for the acts of its agent when it is an

undisclosed principal:

 **(1) An undisclosed principal is subject to liability to a third party who is justifiably induced to make a detrimental change in position by an agent acting on the principal's behalf and without actual authority if the principal, having notice of the agent's conduct and that it might induce others to change their positions, did not take reasonable steps to notify them of the facts.
(2) An undisclosed principal may not rely on instructions given an agent that qualify or reduce the agent's authority to less than the authority a third party would reasonably believe the agent to have under the same circumstances if the principal had been disclosed.**

Plaintiff contends that the liability of AHMSI for the TILA violations is based on their continual

failure to disclose their principal and their continual failure to indentify the limits and scope of their agency

relationship with their principal.  Plaintiff further contends they have requested, contained in a Qualified

Written Request under RESPA, for the principals identity, clearly allowed under common law, Restatement

of Agency, RESPA and the Truth In Lending Act and they have refused to do so thereby subjecting

themselves to liability to Plaintiff for the liabilities of their principal.

**D.      PLAINTIFF'S NOTICE IS VALID, TIMELY AND CONSISTENT WITH THE PROCESS OF RESCISSION UNDER THE TRUTH IN LENDING ACT.**

Defendant points to the offer of the Plaintiff in their rescission letter of a settlement offer.  While they

couch such an act as not a valid tender or an attempt to create some highly favorable terms from the

Defendant, they miss a very important point to the offer.  Plaintiff believes they are legally obligated to

mitigate the damages to Defendant.  In an attempt to mitigate the damages, Plaintiff offered alternatives in its

rescission request by agreeing to settle the issue in multiple manners such as a modification and even left open the door to counterproposals from Defendant.

    a.  Plaintiff did so on the belief of the general principal that "victims of legal wrong should make reasonable efforts to avoid incurring further damage."

    b.  Furthermore, since every contract has an element of "good faith and fair dealing" said attempts were to act in good faith in attempting to resolve the rescission issue.

Unfortunately, showing incredibly bad faith on their part, Defendant did not act upon Plaintiff's attempt to mitigate damages or acknowledge Plaintiff's attempts to act in good faith towards a resolution. Even in their motion they couch these "good faith" efforts as something foul despite the fact they themselves come to the table with "unclean hands" as they never acted in any good faith towards the rescission or the attempt to mitigate the damages.  After all, if Defendants were to foreclose on the property or if the Plaintiff were to return the property to Defendant, the loss to Defendant would be far greater.

Ironically, Defendants conflict their own statements in their pleadings.  On Page 6 at lines 10-11, they state:

**"…must be in writing and be an affirmative unconditional statement of rescission such as "I WISH TO CANCEL.""**

Then, on page 7, at lines 1-2, they state, "Plaintiffs intended or wished" to have it modified not have it rescinded.

To keep this in the simplest of terms, when a consumer rescinds, they may use the form provided by the creditor, which is based on a model form provided by the Board of Governors of the Federal Reserve through Regulation Z, or by a separate notification.  If they use the form provided by the creditor, all they must do is sign their name and date the notification next to the statement "I WISH TO CANCEL."  Four very simple words begin the process and even those four words incorporate the word "wish".  Black's Law Dictionary defines "wish" as "eager desire; longing; expression of desire; a thing desired; an object of desire."  Desire is further defined as "to ask, to request."  In effect, a consumer merely must notify the creditor of the desire to cancel for notice to be effective.

Case law shows that the mere sending of the Notice begins a process and is not the end all of it.  As

stated in <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167 (9th Cir. 05/29/2003) at **¶22:**

> **As rescission under § 1635(b) is an on-going process consisting of a number of steps…**

The issue before the Court was a notice that contained a rescission request sent within the 3 years?

The answer is yes.  Did the letter contain offers to compromise the approach to rescission so as to mitigate the

damages to the creditor?  Yes.  Plaintiff contends that the doing so in good faith was the right thing to do and,

while not pled in the complaint, on the basis of equitable tolling, a timely notice which gives the creditor an

opportunity to work with the consumer is completely consistent with the private remedies of TILA.  The

Court in Yamamoto *supra* at ¶16 said it best:

> **As we explained, whether <u>a decree of rescission should be conditional depends</u> upon "<u>the equities present in a particular case</u>, as well as <u>consideration of the legislative policy of full disclosure</u> that underlies the Truth in Lending Act and <u>the remedial-penal nature of the private enforcement provisions of the Act</u>.**

Plaintiff agrees with the wisdom of the Court in the Yamamoto case the rescission aspect is "penal" in

its application.  In an attempt to minimize that "penal effect", Plaintiff tried to mitigate the Defendants

damages.  Their response is that any attempt by the Plaintiff to act in good faith and mitigate the damages is a

weakness worthy of loss of a valid rescission.  Should the court agree with Defendants, Plaintiff requests that

they be allowed to amend the complaint to incorporate the concept of equitable tolling as allowed in TILA

cases under <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir.1986).

As for the Defendant's contention of an intent to reaffirm the debt in a bankruptcy petition, they offer

nothing in their papers that such a box being checked on the petition waives all rights Petitioner may have

under the Truth In Lending Act.  Plaintiff could not find any case law one way or the other on this issue.

Regardless, Plaintiff contends that the moment the notice to cancel was originally sent, in effect, the "patient

died on the table."  Merely checking a box on a bankruptcy petition does not undo that event.  Defendants are

disingenuous in their context as it is industry practice that when a consumer in fact rescinds within the

original 3 days, the loan is dead and if the consumer changes their mind they must submit a new loan request.

Expert testimony on this industry practice would be presented at trial if necessary but on the face of their argument, it is merely a novel theory not based on any precedent.

## E.  THE ISSUE OF TENDER UNDER THE TRUTH IN LENDING ACT.

Defendants raise issues of tender.  While they raise interesting arguments, the issue of tender is less important as Defendants have never agreed to rescind giving rise to this complaint.  Tender is a subsequent event, which Plaintiff has always been prepared to address; however, was prevented from doing so because Defendant never acted on the Plaintiff's request.  Defendant has refused rescission which gave rise to this complaint and while never addressed in a response to the rescission, now raise tender as a reason.  However, Defendants have no factual evidence to support that Plaintiff was unprepared to tender if they agreed.

First, to keep this in the simplest of terms, when a consumer rescinds, they may use the form provided by the creditor, which is based on a model form provided by the Board of Governors of the Federal Reserve through Regulation Z, or by a separate notification.  If they use the form provided by the creditor, all they must do is sign their name and date the notification next to the statement "I WISH TO CANCEL."   Four very simple words begin the process and even those four words which incorporate the word "wish".  Black's Law Dictionary defines "wish" as "eager desire; longing; expression of desire; a thing desired; an object of desire."  Desire is further defined as "to ask, to request."  In effect, a consumer merely must notify the creditor of the desire to cancel for notice to be effective <u>and is not required by said notice to contain proof of tender.</u>

Second, Defendant's cite authority in <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167 (9th Cir. 05/29/2003).  We agree that the case adequately states the law in this District as is very applicable to this case; however, they have substantially misread the ruling.  As stated at ¶ 17:

> This appeal requires us to decide whether a court **may** order borrowers who seek recission of a mortgage under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, **<u>to show that proceeds can be tendered if they prevail</u>. Here, the borrowers testified that they could not fulfill TILA's tender requirement, and the district court gave them sixty days before dismissing their recission claim to attempt to do so. When they were unable to provide evidence that they could tender the proceeds, the court granted summary judgment in**

**favor of the lender. <u>We hold that a district court has discretion to modify the sequence of rescission events in these circumstances</u>, and affirm.**

The facts in *Yamamoto* are the District Court had actually modified the sequence of rescission events as allowed by 15 U.S.C. § 1635, gave the consumer 60 days to attempt tender before foreclosing the consumer's rescission right.  The 9th Circuit properly ruled, using the black letter of the statute, that the court has the jurisdiction to modify the process.  That is not the case before this Court.  Defendant has not even agreed to rescission and is now claiming, in a Motion to Dismiss, that they do not even have to act on a rescission request without a proof of tender.  In effect, Defendant appears to want to step into the shoes of the Court and apply the Court's discretion as their own.

Third, this brings Plaintiff to a very important point, the current "un-modified" process stated in 15 U.S.C. §1635(b):

**(b) Return of money or property following rescission**

**When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. <u>Within 20 days after receipt of a notice of rescission</u>, the <u>creditor shall return to the obligor any money or property given</u> as earnest money, downpayment, or otherwise, and <u>shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.</u>  <u>If the creditor has delivered any property to the obligor, the obligor may retain possession of it.</u> <u>Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor</u>, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. <u>The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.</u>**

This process is further supported by Regulation Z §226.23(d):

**(d) Effects of rescission.**

**(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.**

**(2) <u>Within 20 calendar days after receipt of a notice of rescission</u>, the <u>creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest</u>.**

- 13 -

**(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. <u>When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.</u> At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.**

**(4) <u>The procedures outlined in paragraphs (d) (2) and (3) of this section may be modified by court order</u>.**

Dissecting these statutes for clarity, the process, as defined in those statutes is summarized as follows:

- Within 20 days after receipt of notice:
    - the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise
    - shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction
    - If the creditor has delivered any property to the obligor, the obligor may retain possession of it

- Upon performance by creditor:
    - the obligor shall tender the property to the creditor
    - except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value
    - Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor

- Creditor's failure to accept tender:
    - If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it

- Modification of procedures:

o   The procedures prescribed by this subsection shall apply except when otherwise ordered by a court

However, the Board of Governors to the Federal Reserve is also authorized to issue Official Staff Commentary to Regulation Z to further assist creditors and the public with the statute and regulations.  They have done so related to Regulation Z 226.23(d) as follows:

**23(d)  Effects of rescission.**

**Paragraph 23(d)(1).**

**1.  Termination of security interest.  Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission. <u>The security interest is automatically negated regardless of its status</u> and whether or not it was recorded or perfected. Under § 226.23(d)(2), however, <u>the creditor must take any action necessary to reflect the fact that the security interest no longer exists.</u>**

**Paragraph 23(d)(2).**

**1.  Refunds to consumer.  <u>The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded.</u> "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.**

**2.  Amounts not refundable to consumer.   Creditors need not return any money given by the consumer to a third party outside of the credit transaction, such as costs incurred for a building permit or for a zoning variance. Similarly, the term "any amount" does not apply to any money or property given by the creditor to the consumer; those amounts must be tendered by the consumer to the creditor under § 226.23(d)(3).**

**3.  Reflection of security interest termination.  <u>The creditor must take whatever steps are necessary to indicate that the security interest is terminated</u>. Those steps include the cancellation of documents creating the security interest, and the filing of release or termination statements in the public record. In a transaction involving subcontractors or suppliers that also hold security interests related to the credit transaction, the creditor must insure that the termination of their security interests is also reflected. <u>The 20-day period for the creditor's action refers to the time within which the creditor must begin the process</u>. *<u>It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion</u>*.**

**Paragraph 23(d)(3).**

**1.  Property exchange.  <u>Once the creditor has fulfilled its obligations under § 226.23(d)(2), the consumer must tender to the creditor any property or money the creditor has already delivered to the consumer</u>. At the consumer's option, property may be tendered at the location of the property. For example, if lumber or fixtures have been delivered to the consumer's home, the consumer may tender them to the creditor by making them available for pick-up at the home, rather than physically returning them to the creditor's premises. Money already given to the consumer must be tendered at the creditor's place of business.**

**2.  Reasonable value.  <u>If returning the property would be extremely burdensome to the consumer, the consumer may offer the creditor its reasonable value rather than returning the property itself</u>. For example, if building materials have already been incorporated into the consumer's dwelling, the consumer may pay their reasonable value.**

**Paragraph 23(d)(4).**

**1.  Modifications.  The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. <u>The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly</u>. Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.**

The issue, as stated in the complaint, is that Defendant did not act on the request within the twenty days and they appear to want to impose additional requirements on the Plaintiff that do not exist in the statute before they have to act within the twenty days.  As stated in the Official Staff commentary, the consumer, Plaintiff herein, <u>must merely notify Defendant that they wish to cancel and from that point forward</u>, **<u>*"…the creditor is responsible for seeing the process through to completion*</u>.**"  At this point in time, factually, Defendant has not offered any proof that they acted on any "notice of rescission" within twenty days of receipt of the notice.  In fact, they appear to argue that they did not act as the request did not contain a tender.

The process is commonly addressed by creditors across the country and is typically done as follows:

- Consumer notifies creditor of desire to cancel.

- Within 20 days of receipt, creditor or assignee makes contact with consumer to begin process and usually proposes an agreement for an orderly rescission that includes creditors' agreement to rescission and by negotiation creates a simultaneous exchange of the release for the tender.

- If the consumer refuses to enter into such an agreement, most creditor's or assignee's will then file an action in District Court for Declaratory Relief requesting modification of the process to maintain their security interest pending tender.

The above process is consistent with the facts and holding in *Yamamoto* supra.  This is a very sound approach and followed by most creditors/assignees across the country.  However, Defendant did not follow that process and instead wants to ignore the requests within the twenty days, not act on the rescission request at all, not seek court modification of the process but seek the benefit like it had followed the process and also obtained court modification.  Unfortunately, they have overlooked that they have damaged Plaintiff and forced Plaintiff to file this suit to even get to a discussion and in doing so violated 15 U.S.C. §1640.

More important, the discretion the Court has to modify is an equitable remedy. As stated in ¶16 of *Yamamoto supra*:

> **As we explained, whether <u>a decree of rescission should be conditional depends</u> upon "<u>the equities present in a particular case</u>, as well as <u>consideration of the legislative policy of full disclosure</u> that underlies the Truth in Lending Act and <u>the remedial-penal nature of the private enforcement provisions of the Act.</u>**

In effect, Yamamoto requires the court considering rescission to evaluate the equities in each particular case. The court in *Yamamoto supra* went on to elaborate further in ¶21:

> **Thus, a court <u>may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations.</u> Our precedent is consistent with the statutory and regulatory regime of leaving courts free to exercise <u>equitable discretion to modify rescission procedures.</u> This also comports with congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265.**

The court in *Yamamoto supra* clearly has stated that the court can impose conditions on rescission once the creditor has performed its obligation.  In this case before the Court, the <u>Defendants have done nothing to even begin the process of rescission</u>.   As such, the equitable remedy of Yamamoto supra should only be considered if AHMSI and DBNTC and their investor come to the court with clean hands.

Plaintiff contends that AHMSI and DBNTC and their investor may not request from the court equity because of the doctrine of unclean hands. The doctrine is based on the maxim that one who comes into equity must come with clean hands. Stein v. Simpson, 37 Cal. 2d 79, 83 (1951). Unclean hands is generally an affirmative defense in actions seeking equitable relief, but the defense is not limited to equity and may be asserted in legal action as well. Goldstein v. Lees, 120 Cal. Rptr. 253, 255 (Ct. App. 1975). In short, the unclean hands doctrine requires that a plaintiff act fairly in the matter for which he or she seeks a remedy. Here, AHMSI and DBNTC, their investor and their predecessor Wasthington Mutual were required to act on the rescission request within 20 days and did not.  This failure to act violated the Truth In Lending Act and now they are asking the court for equity in a Motion to Dismiss that requests the court apply its equitable powers retroactively for their own misconduct.  This is improper. Even more important AHMSI and DBNTC is taking the position that Courts will merely "rubber stamp" their demand for proof of tender before even acting on a request.  This presumed "rubber stamp" approach "slaps the face" of the statutes and case law that requires the Court to weigh the equities in each individual case.

Furthermore, the court has not made a legal determination that rescission is warranted as of yet or that grounds for rescission exist.  As stated in Yamamoto supra at ¶22:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, <u>there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what</u>.
>
> <u>Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.</u> If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

Most important, if the Court were to decide that it could apply equitable remedies despite the unclean hands of Defendants, no factual evidence exists before the court that Plaintiff does not have the ability to tender.  In *Yamamoto supra*, the court actually gave the Plaintiff 60 days in which to tender and did not dismiss the case until they were unable to perform.  In a Motion to Dismiss, it would be inappropriate to

dismiss the complaint merely on the pleadings absent factual evidence of a lack of tender upon giving the

Plaintiff an opportunity to tender. Supporting this assertion are several recent cases right on point:

**Horton v. California Credit Corp. Retirement Plan, No. 09-cv274-IEG-NLS (S.D.Cal. 08/13/2009)**

> **The Ninth Circuit has not established whether a plaintiff seeking rescission of a loan under TILA must allege at the pleading stage the ability to tender the proceeds of a loan. Although Defendant relies on La Grone v. Johnson, in that case the Ninth Circuit reversed a grant of summary judgment in favor of a borrower, holding that the district court should have conditioned rescission of the loan upon the borrower's ability to tender the amounts advanced by the lenders. La Grone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976). In another case Defendant cites, Yamamoto v. Bank of New York, the Ninth Circuit similarly affirmed a district court's grant of summary judgment in favor of a creditor, when the borrowers admitted an inability to tender. Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1169 (9th Cir. 2003).**

> **In fact, it is the Ninth Circuit's position that "whether a decree of rescission should be condition[ed upon the borrower's tender] depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'" Yamamoto, 329 F.3d at 1171 (citation omitted). The Court declines to engage in such an inquiry at this stage of the litigation and accordingly declines to alter the rescission-tender chronology set out in 15 U.S.C. § 1635(d). The Court therefore denies Defendant's motion to dismiss Plaintiffs' TILA rescission claim.**

The court in this case found that it was improper to engage in an inquiry of the equities of the case so

early in the litigation in a Motion to Dismiss.

**Ozuna v. Countrywide's Home Capital Funding, No. 08cv2367 - IEG - AJB (S.D.Cal. 08/13/2009)**

> **"[15 U.S.C. 1635(b)] adopts a sequence of rescission and tender that must be followed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property."**

> **Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170 (9th Cir. 2003). However, under Yamamoto, a district court has discretion to alter the rescission-tender chronology. Id. at 1171.**

> **At this procedural juncture, the Court declines to alter the rescission-tender chronology because, at the pleading stage, TILA does not require tender as a prima facie element of a rescission claim. Therefore, the Court denies Countrywide's motion to dismiss Plaintiff's TILA claims.**

This decision is important as the court determined that tender was not a requirement to advance a rescission claim at the initial pleadings stage and was not appropriate to dismiss the complaint in a Motion to Dismiss.

**Bantique v. Greenpoint Mortgage Funding, Inc., No. CIV. 09-663 WBS DAD (E.D.Cal. 04/30/2009)**

>   In light of their "equitable discretion" to modify the rescission process, <u>many courts have held that motions to dismiss claims for rescission on the ground that plaintiffs are unable to tender back the property received are "premature."</u> See Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139, 1146 (D. Minn. 2007) ("Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [plaintiffs] demonstrate they have the means to secure the necessary financing at this point in time."); see also Cosio, 2009 WL 201827, at *3 <u>("[S]imply because [plaintiffs] presently do not have sufficient funds available to make certain payments does not necessarily mean that at the time of rescission [they] will be unable to tender. Circumstances may very well change between now and the time of tender.").</u> In light of this reasoning, <u>plaintiff's failure to allege that he is "ready, willing, and able" to tender his loan proceeds in the event of rescission is not fatal to his claim at this early stage of the proceedings.</u>

The Honorable William B. Shubb in the Eastern District of California found that the granting of Motions to Dismiss based on a lack of tender is premature and that a Plaintiff's failure to plead they were "ready, willing and able" to tender is not fatal at the initial complaint and pleading stage.

**Aurora Loan Services, LLC v. Britton, No. 2:08-cv-01535-GEB-KJM (E.D.Cal. 08/13/2009)**

>   When weighing the equities, "<u>all the circumstances</u>" are taken into consideration, "including the nature of the [TILA] violations." Id. at 1173. As the Ninth Circuit observed in LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976), <u>when the TILA violations are "not egregious," "[r]escission [] should [be] conditioned on a tender by [the borrower] of the [loan proceeds] advanced by the [creditor]."</u>

The Honorable Garland E. Burrell, Jr. in the Eastern District of California found that all of the equities must be weighed and that the Defendant must show that their TILA violations are not egregious.  At this stage of the Defendants' Motion to Dismiss, they did not provide any factual evidence that the TILA violations were not egregious.  In fact, they contend that no violation has occurred.  Therefore, "all of the circumstances" are not before the court and the court conditioning tender as part of the Motion to Dismiss request would be inappropriate.

**Peay v. MIDLAND MORTGAGE COMPANY, No. 2:09-cv-02228 ( Dist. Court, ED California November 13, 2009)**

However, courts have discretion as to whether to require tender, and several courts have found that failure to allege tender is not fatal to plaintiff's complaint at the motion-to-dismiss stage. See, e.g., Alcaraz v. Wachovia Mortg., FSB, No. CV 08-1640, 2009 WL 160308, at *4 (E.D. Cal. Jan. 21, 2009) (O'Neill, J.) (refusing to grant a motion to dismiss plaintiff's rescission claims under TILA even though the complaint failed to allege the ability to tender because the court was troubled by the assertion of a factual issue to defeat plaintiff's rescission claim); see also ING Bank v. Ahn, No. 09-995, 2009 WL 2083965, at *1-2 (N.D. Cal. July 13, 2009) (explaining that case law does not require courts to grant a motion to dismiss where plaintiff fails to allege tender).

In the recent ruling in <u>Peay v. Midland</u>, the Court stated that failure to allege tender in itself is not

fatal to a plaintiffs complaint at the MTD stage.

<u>**Victoria v. JPMorgan Chase Bank**</u>, 2:09-cv-02059 ( Dist. Court, ED California October 2, 2009)

JPMorgan Chase interprets case law permitting courts to require mortgagor-plaintiffs to provide proof of their ability to repay loan proceeds if rescission were to be granted under TILA, as a requirement that mortgagor-plaintiffs must first provide such proof, and thereby argues that Victoria's claim for rescission under TILA is insufficient because he did not provide such proof in his complaint. See Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003) ("[T]here is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what."). Accordingly, while courts may require plaintiffs to provide proof of their ability to repay loan proceeds to maintain a cause of action for rescission, it is not necessary that a plaintiff plead allegations of his ability to repay the loan when making a claim under TILA. <u>Moreover, determination of a party's ability to repay a loan is a question of fact, which cannot be determined in a motion to dismiss.</u> See Hernandez v. Hilltop Financial Mortgage, Inc., 622 F. Supp. 2d 842, 849 n5 (N.D. Cal. 2007). Thus, Victoria need not plead his ability to repay his home loan in order to sufficiently plead a claim for rescission under TILA.

Defendant also argues that Victoria failed to state a claim for rescission because he "failed to offer repayment or tender repayment in the Complaint." Apparently, JPMorgan Chase contends that in order to assert a claim for rescission under TILA, a plaintiff must simultaneously repay the lender or make an offer to repay the lender. In response, Victoria argues that TILA does not set forth when tender must be made for adequate notice under the statute and, further, that Victoria could not possibly provide tender because JPMorgan Chase failed to respond to Victoria's request for the amount due on his loan. While these arguments may be relevant at a later stage of litigation, they fail to address whether plaintiff's claim fails as a matter of law. Specifically, Defendant does not provide any authority to support its argument that a plaintiff must repay or make an offer to repay a loan in his complaint. <u>Rather, upon review of TILA and Regulation Z, "no language [can be found that] requires the consumer to tender or make an offer to tender the loan proceeds in his notice of rescission to the creditor." Hernandez, 622 F. Supp. 2d at 848. As such, defendant has not identified any deficiencies in Victoria's complaint, and thus, its motion to dismiss Victoria's claim for Rescission under TILA is denied.</u>

The <u>Victoria v. JPMorgan</u> case is important as this Court has issue the ruling.  This Court has found that tender is not necessary at the MTD stage of the litigation.

Since this is a Motion to Dismiss, the court must accept the allegations in the complaint as true and *draw all reasonable inferences in favor of the plaintiff*. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319, 322 (1972).

Therefore, the issue of tender is premature since the court has not determined that rescission is proper yet at the pleading stage.  Furthermore, since Defendants have "unclean hands" the equitable remedy of altering the rescission process would be inappropriate in a Motion to Dismiss.

## F.  AHMSI DID VIOLATE 15 U.S.C. §1641(f)

We are confused by Defendants assertion that the simple read of 15 U.S.C. §1641(f) does not require them to disclose the name of the note holder.  By their own moving papers they acknowledge they are the loan servicer.  However, they DISCLOSED NOTHING and do not argue they have made any disclosure under said act.  Despite their assertion that disclosure is optional, they offer nothing to support said optional position.  As stated in <u>Ramos v. Citimortgage, Inc.</u>, No. CIV. 08-02250 WBS KJM (E.D.Cal. 01/07/2009), AHMSI does have an obligation to respond to the request under 15 U.S.C. §1641(f):

> **Defendant contends that the Loan Modification Agreement attached to the Complaint demonstrates that it is an assignee of plaintiff's loan, not a loan servicer, and therefore it cannot be liable under 15 U.S.C. § 1641(f). See 15 U.S.C. § 1641(f)(2) ("Upon written request by the [borrower], the servicer shall provide the [borrower], to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.").  In the Complaint, however, plaintiff alternatively alleges that, subsequent to the Loan Modification Agreement, defendant "resold [the loan] to parties unknown and now services it." (Compl. ¶ 69.)  Thereafter, defendant allegedly failed to comply with plaintiff's Qualified Written Request for the identity of the "true note holder." (Id. ¶ 32.) Under Federal Rule of Civil Procedure 8(d), alternative allegations are permitted, and the attached Loan Modification Agreement is not inconsistent with plaintiff's allegations under 15 U.S.C. § 1641(f). Accordingly, the court must deny defendant's motion to dismiss with respect to this aspect of plaintiff's TILA claim.**

The amendment in Public Law 111-22 was important in that it made creditors liable for servicers who fail to disclose the name, address and telephone of the owner of the obligation.  Section 131(f), stated above, is contained in the United States Code as 15 U.S.C. 1641 and both state:

**§ 131.  Liability of assignees**

**(f)  TREATMENT OF SERVICER.--**

**(2)  … Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**

In effect, the owner of the obligation is liable for the servicer failing to provide the name, address and telephone number of the owner of the obligation.  As previously stated, AHMSI is liable for its acts as a servicer since they have not disclosed their principal under agency law.  Since AHMSI has never responded to the QWR, this law has gone into effect.

**G.  PLAINTIFFS REQUEST FOR DAMAGES IS TIMELY.**

Defendants are merely misstating the law.  As has been pled, Plaintiff is requesting damages for failure to respond to their timely rescission request, not for the disclosures in the original loan transaction.  Pursuant to 15 U.S.C. §1635(g), Platintiff is entitled to damages:

(g) **Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

In effect, a consumer has one year for damages under §1640, within one year of a timely rescission.  Plaintiff is timely in its request.

**H. PLAINTIFF HAS A VALID RESPA CLAIM**

The issue of damages and its application to this case is best answered in the case of Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009.  The court related to RESPA stated:

**Defendant's argument as to actual damages is without merit because, while in the section of the Complaint dedicated to the RESPA claim Plaintiffs allege only that they have suffered "actual damages," Plaintiffs also incorporated by reference all prior allegations as well. Accordingly, the same allegations regarding damages alleged under Plaintiffs' TILA claim are applicable here, and Plaintiffs adequately alleged they suffered injury as a result of having to resort to the filing of this litigation.**

Plaintiff contends they have adequately pled damages for failing to respond to the QWR. As for dismissing the complaint on this basis, Defendants are misguided as several courts have addressed similar requests and find such actions to dismiss this action at this early stage is inappropriate.

A genuine question of fact is in dispute in the complaint.  As the court pointed out in <u>McLean v. GMAC Mortgage Corp.</u>, No. 06-22795-CIV-O'SULLIVAN (S.D.Fla. 05/02/2008):

**"Although the March 9, 2005 correspondence may be timely as to the February 14, 2005 correspondence, <u>a jury may find</u> that the March 9, 2005 correspondence <u>does not satisfy the requirements of section 2605(e)(2) in that it fails to respond to any of the inquiries raised in the plaintiffs' letters</u>. Section 2605(e)(2) requires a loan servicer to take certain action within 60 days of receipt of a qualified written request. Such action may include:**

**provid[ing] the borrower with a written explanation or clarification that includes . . . (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e)(2).**

**Whether GMAC's March 9, 2005 letter _satisfied the requirements of section 2605(e) is a genuine issue of material fact and GMAC is not entitled to summary judgment on the plaintiffs' RESPA claims under section 2605(e)_ (qualified written requests).**

The statute is clear, if a servicer has not complied with the Qualified Written Request provisions of RESPA, 12 U.S.C. § 2605(f) provides for damages and costs as follows:

**(f) Damages and costs**

**Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

**(1) Individuals**

**In the case of any action by an individual, an amount equal to the sum of -**

**(A) any actual damages to the borrower as a result of the failure; and**
**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.**

**(3) Costs**

**In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.**

Plaintiff respects that the Court may allow statutory damages up to $1,000.00 for additional damages under 12 U.S.C. § 2605(f)(1)(B) and have properly plead that request and discretion in its adversary proceeding.

At the very least, Plaintiff, in its request, wanted to know who truly holds their obligation and was forced to file suit to find out.  If Defendants had given that information, damages would be less to Plaintiff. If Defendants had responded to the rescission request, possibly a lawsuit could have been avoided as the tender issue could have been easily resolved had they merely cooperated with the rescission.  Of course, the Plaintiff has been damaged.

Clearly, the statute allows for attorneys fees should Plaintiff prevail in this case.  It appears that Defendant is requesting exact dollar amounts from the complaint or they are entitled to the complaint being dismissed.  Plaintiff has pled in sufficient detail his claims with particular specificity to meet Fed R Civ P 8(a) requirements.

The letter of meets all of the required information of being a Qualified Written Request under RESPA.  Defendants for some reason believe that the request of the Plaintiff was outside of the scope of the "servicing of the loan" and therefore was not a Qualified Written Request under RESPA.  Defendants want "servicing of the loan" narrowly interpreted to their benefit instead of broadly interpreted. However, of course, the Plaintiff did not inquire into something totally irrelevant, like what is the weather.  The Plaintiffs inquiry was definitely related to the servicing of the loan and called into question rescission rights which directly influence how the loan is serviced.  All the documents supporting the validity of the loan are quite relevant.

Further, as has been clearly outlined in the AHMSI and DBNTC's Motion to Dismiss and Plaintiffs response herein, not giving the name of the true owner of the obligation which was contained in the

Qualified Written Request stated herein, has proven to harm Plaintiff.  Plaintiff has proven that they were entitled to know the name, address and telephone of the owner of the obligation pursuant to TILA, common law, Restatement of Agency and RESPA.

## I.  PLAINTIFF HAS ADEQUATELY PLED A STATE FAIR DEBT COLLECTION PRACTICES ACT CLAIM AS THE CALIFORNIA RFDCPA DOES APPLY TO DEFENDANT

The basis for the Plaintiff's claim related to the RFDCPA is due to the fact that Plaintiff asserted his rights to curtail all contact with the Plaintiff which is specifically allowed under the RFDCPA.

Defendants' motion states that as a matter of law, loan servicers are not "debt collectors" under the RFDCPA (they reference the Federal Fair Debt Collection Practices Act in their papers however, Plaintiff has only pled in its complaint violations of the California RFDCPA).

Plaintiff has stated that they received numerous phone calls and received several written collection notices unrelated to foreclosure notices (which Plaintiff contends are not covered by the act) but certainly phone calls asking when the Plaintiff is going to make payments are.

However, we again reference the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which addressed this issue clearly:

**Defendant moves to dismiss the instant claim arguing that it, as a loan servicer, cannot be held liable under the RFDCPA. However, Defendant relies upon federal law, which specifically excludes loan servicers from its purview. The RFDCPA definition of a debt collector is broader than the federal definition. Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal., 2008). Indeed, in California, a debt collector is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).**

**In this case, Plaintiffs claim that "Defendant repeatedly contacted Plaintiff attempting to collect the debt." Compl., ¶ 86. Additionally, Plaintiffs allege they were contacted regularly by Defendant for purposes of collection, from which this Court can infer, at least for purposes of the instant Motion, that Defendant regularly engaged in the challenged practice. Accordingly, Plaintiffs have adequately stated a claim for violation of the RFDCPA. See Lemieux v. Jensen, 2004 WL 302318, *2 (S.D. Cal.) (interpreting federal law). Defendant's Motion to Dismiss Plaintiffs' third cause of action is denied.**

Next, we would also call the court to the attention of <u>Yulaeva v. Greenpoint Mortgage</u>, also decided

right here in the Eastern District in which the court separated out the foreclosure related activity from the

debt collector activity and found that Greenpoint was a debt collector, the court stated:

**YULAEVA v. GREENPOINT MORTGAGE FUNDING, INC., 2:09-cv-01504  (US: Dist. Court, ED California 2009 September 3, 2009)**

**Defendants separately argue that their alleged reporting of plaintiff's past-due status to credit reporting agencies is an action undertaken in furtherance of foreclosure, and thereby not debt collection activity. Defendants rely on two cases. The first is Heinemann v. Jim Walter Homes, Inc., 47 F. Supp. 2d 716, 722 (N.D. W. Va. 1998), which held that "publication of the notice of sale and the final trustees sale" of a mortgaged property was not collection of a debt, and thus not within the scope of the FDCPA. Second is Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which followed Heinemann to conclude that "Foreclosing on a trust deed is distinct from the collection of the obligation to pay money," such that "any actions taken . . . in pursuit of the actual foreclosure may not be challenged as FDCPA violations." Hulse then held that the act of causing a trustee's notice of sale to be filed could not support an FDCPA claim. Id. at 1203-04. The conduct alleged here is factually distinct from that at issue in these cases. <u>The purported debt collection activity in those cases was the posting of a notice of sale and other activity solely connected with foreclosure, whereas plaintiff's claim here is based on reporting of default to credit reporting agencies, an activity that might have some incidental connection to foreclosure, but that is also squarely connected to debt collection. While Hulse and Heineman held that an action's connection with foreclosure is not sufficient to demonstrate that the act is debt collection activity, defendants here argue that a connection to foreclosure demonstrates that an act is not debt collection activity. These cases simply do not stand for that proposition.</u>**

Next, we would point out <u>Ross v. Bank</u>, also decided here in the ED..  The court concluded that a

merely a statement by the Plaintiff that defendant threatened to "increase the amount of her debt" was

sufficient to "nudge" her RFDCPA claim across the line from conceivable to plausible.

**<u>Ross v. Wells Fargo Bank</u>, US: Dist. Court, 2:09-cv-00319 (ED California 2009 May 7, 2009)**

**As to plaintiff's final three allegations, Wells Fargo argues that they are "symptomatic of a complaint that alleges mere conclusions" and that, to the extent that they "hinge[] on the recordation and service of foreclosure notices, [are] precluded by California's litigation privilege [California Civil Code section 2924(d)]." (Wells Fargo's Mot. Dismiss 16:11-21.) Although the allegation that defendant used "unfair and unconscionable means to collect a debt" is quite vague, her additional allegations that Wells Fargo "falsely state[d] the amount of [her] debt" and threatened to "increase the amount of [her] debt by including amounts not permitted by law or contract" are sufficient to "nudge[]" her RFDCPA claim "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002) ("Indeed it may**

**appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))).**

As to the RFDCPA claim, Plaintiff requests the court deny Defendants motion to dismiss or, in the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

**J.  PLAINTIFF'S UCL CAUSE OF ACTION DOES PROPERLY STATE A CLAIM**

Defendants contend that this cause of action fails because the TILA, RESPA and RFDCPA claims fail and therefore, this cause of action fails.  Of course, for the reasons set forth related to those causes of action, we believe that those actions will stand and therefore the Plaintiffs UCL cause of action will also stand.

Unfortunately for Defendants, we think that Defendants' Motion to Dismiss has supported Plaintiff's claim for relief for their acts.  Defendants have intentionally ignored the TILA rescission claim and stand by their position that the QWR under RESPA did not require their responses.  If wrong, this proves they are engaging in unfair business practices as consumers should not have to litigate these statutes to force compliance.

A glaring example is contained in our complaint… their continual refusal to disclose to Plaintiff and similarly situated consumers the name, address and telephone number of the true owner of the obligation.  This conduct is so outrageous.  Said failure makes the cost to litigate by most consumers in California almost impossible.  Under basic common law, a consumer should be entitled to know with whom they have an obligation.

Regardless, under Federal pleading standards, we are to provide notice pleadings and not factual pleadings as required in State court actions.  Plaintiff believes they have met the liberal pleadings standards required in a Federal case.

Plaintiff contends that the court will find that at the minimum a federal question remains related to TILA in addition to the questions related to RESPA.  Plaintiff has maintained a cause of action for TILA and RESPA.

However, we again reference the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which addressed this issue clearly:

**Plaintiffs contend various of their claims against Defendant provide independent grounds for a finding that Defendant violated California's UCL. Cal. Bus. & Prof. Code § 17200. The UCL prohibits fraudulent, unlawful, or unfair business practices and "permits violations of other laws to be treated as unfair competition that is independently actionable." Leonel v. Am. Airlines, Inc., 400 F.3d 702, 714 (9th Cir., 2005) (quoting Kasky v. Nike, Inc., 45 P.3d 243, (2002)). To the extent Plaintiffs' other claims survive, so does their UCL claim. Accordingly, Defendant's Motion to Dismiss Plaintiffs' fourth cause of action is denied.**

Also, we would point out these additional cases that we find instrumental in maintaining this UCL claim:

**VIDETTO v. KELLOGG USA, US: Dist. Court, ED California 2009 May 20, 2009**

**Thus, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Id. However, "[d]ecisions granting motions to dismiss claims under the Unfair Competition Law have occasionally been upheld."**

**Ramos v. CITIMORTGAGE, INC., US: Dist. Court, ED California 2009 January 7, 2009**

**The UCL prohibits "any unlawful, unfair or fraudulent" business practice. Cal. Bus. & Prof. Code § 17200. The statute "encompasses anything that can properly be called a business practice which at the same time is forbidden by law." Leonel v. Am. Airlines, Inc., 400 F.3d 702, 714 (9th Cir. 2005) (citing Cal. Bus. & Prof. Code § 17200). Thus, the UCL "permits violations of other laws to be treated as unfair competition that is independently actionable." Id. (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)). Since plaintiff's Complaint sufficiently alleges a claim of fraud, violations of TILA, and violations of the FDCPA, RFDCPA, and FCRA, it also states a claim under the UCL. Accordingly, the court will deny defendant's motion to dismiss with respect to plaintiff's UCL claim.**

Defendants also argue that plaintiff's unfair competition claim fails because plaintiff has not alleged a "pattern of behavior" or a "course of conduct" constituting a business practice. This argument relies on a prior version of the unfair competition statute. In 1992, the Legislature amended section 17200 to expand the definition of unfair competition to include "any unlawful, unfair, or fraudulent business _act_ or practice." (emphasis added).

Accordingly, under the current version of the statute, even a single act may create liability. <u>United Farm Workers of America, AFL-CIO</u>, 83 Cal. App. 4th at 1163 (see <u>CRST Van Expedited, Inc. v. Werner</u>

Enterprises, Inc., 479 F. 3d 1099, 1107 (2007) ("a business act or practice need not be an ongoing pattern of conduct").

Dismissal of the UCL Cause of Action (B&P Code Section 17200) should be denied as we believe:

a.  Federal questions still remain for the court to decide.

b.  In total, all of the acts leading to all of the causes of action give rise to an Unfair Business Practice.

c.  Plaintiff has properly pled a Business and Professions Code Section 17200 violation.

d.  As stated above, we believe that Defendants have violated the Truth In Lending Act and RESPA and have also engaged in an unfair business practice.

As such, Plaintiff believes a genuine issue of fact and the law remains and dismissal is inappropriate.

As to the California B&P 17200 cause of Action, Plaintiff requests the court deny Defendants motion to dismiss.  In the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

**K.  SLANDER CLAIMS**

Plaintiff has asserted his rights under the Truth In Lending Act for rescission, which calls into question the validity of the debt until final disposition by a court of law and has made a Qualified Written Request under RESPA.  12 U.S.C. §2605(e)(3) states:

**(3) Protection of credit rating**

**During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).**

No question, based on the Plaintiff's pending rescission and the absolute prohibition in RESPA against credit reporting while the QWR is pending the reporting of the debt as being delinquent to credit reporting agencies has damaged the Plaintiff.  Plaintiff has had credit lines suspended and interest rates

increased.  It seems obvious to Plaintiff that if any of the TILA, RESPA, UCL and Fair Debt Collection

survives this MTD, this slander of title action should also remain intact.

**L.  PLAINTIFF'S BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING
CAUSE OF ACTION DOES PROPERLY STATE A CLAIM**

We find the following cases instructional related to the application of Good Faith and Fair Dealing in

mortgage servicing cases:

Graupner v. Select Portfolio Servicing, No. B196401 (Cal.App. Dist.2 02/23/2009) (unpublished)

which is a mortgage servicing case:

**A covenant of good faith and fair dealing is implied in every contract in California. (Carma
Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 372;
Andrews v. Mobile Aire Estates (2005) 125 Cal.App.4th 578, 589.) It "implies a promise
that each party will refrain from doing anything to injure the right of the other to receive
the benefits of the agreement." (Aragon-Haas v. Family Security Ins. Services, Inc. (1991)
231 Cal.App.3d 232, 240.) As the Supreme Court has observed, "The covenant of good
faith and fair dealing . . . exists merely to prevent one contracting party from unfairly
frustrating the other party's right to receive the benefits of the agreement actually made.
[Citation.] The covenant thus cannot be endowed with an existence independent of its
contractual underpinnings."**

Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App.4th 299, 61 Cal.Rptr.2d 614 (Cal.App.

Dist.2 03/05/1997), which also recognizes in a mortgage context the obligation of Good Faith and Fair

Dealing:

**" ' "Every contract imposes upon each party a duty of good faith and fair dealing in its
performance and its enforcement." . . . This duty has been recognized in the majority of
American jurisdictions, the Restatement, and the Uniform Commercial Code. . . .' . . . The
covenant of good faith finds particular application in situations where one party is invested
with a discretionary power affecting the rights of another. Such power must be exercised in
good faith." ( Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.
(1992) 2 Cal. 4th 342, 371-372 [6 Cal. Rptr. 2d 467, 826 P.2d 710], citations omitted.) In
general, the covenant imposes a duty upon a party to a contract not to deprive the other
party of the benefits of the contract. ( Floystrup v. City of Berkeley Rent Stabilization Bd.
(1990) 219 Cal. App. 3d 1309, 1318 [268 Cal. Rptr. 898].) The covenant " '. . . not only
imposes upon each contracting party the duty to refrain from doing anything which would
render performance of the contract impossible by any act of his own, but also the duty to
do everything that the contract presupposes that he will do to accomplish its purpose.' "
(Ibid.)**

Vale v. Union Bank, 88 Cal. App. 3d 330, 151 Cal. Rptr. 784 (Cal.App.Dist.1 01/16/1979) is another

case which involves a bank and a non-insurance context:

**The evidence clearly shows that the bank failed to act in good faith.**

<u>Carma Developers Inc. v. Marathon Development California Inc.</u>, 2 Cal.4th 342, 826 P.2d 710, 6 Cal.Rptr.2d 467 (Cal. 03/30/1992), commonly cited in most mortgage cases since its decision, clearly shows that the covenant of Good Faith and Fair Dealing extends to all contracts, not just insurance contracts:

> **'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' (Rest.2d Contracts, § 205.) This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. (Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith (1980)**

> <u>**The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.**</u> **(See, Perdue v. Crocker National Bank (1985) 38 Cal. 3d 913, 923 [216 Cal. Rptr. 345, 702 P.2d 503]; California Lettuce Growers Assn. v. Union Sugar Co. (1955) 45 Cal. 2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)**

Plaintiff has properly pled plausible theories related to AHMSI and DBNTC and good faith and fair dealing. Plaintiff has done so based on the lack of clarity to AHMSI and DBNTC status as a contract holder and also under the restatement of agency theory related to an undisclosed principal.

## M. DEFENDANTS REQUEST TO STRIKE.

Plaintiff referenced Exhibit F as part of its unfair business practices claim (Cal. B&P 17200 et seq.). Said document is presented to support that as is the case in this Case, Defendants are not interested in acting in good faith but merely responded to the Plaintiff's QWR and Rescission request by ignoring it and foreclosing. This is supported by the study done in Exhibit F. Each reference to the UNLAWFUL COMPETITION STATUTES is intended to support a clear and concise statement in the notice pleading requirement under Federal Rules of Civil Procedure 8(a)(2).

The pleadings in the Motion to Strike do not provide any supporting evidence that their reference is inadmissible for any purpose.

The pleadings in Federal practice have limited importance and the inclusion of said UNLAWFUL COMPETITION STATUTES provide further clarity to pleadings for the Defendant to have a much more definitive statement of the claims of Plaintiff.

Plaintiff contends that the request of Defendant to strike Exhibit F to the UNLAWFUL COMPETITION claims is merely a delay tactic intending to unfairly raise the costs of Plaintiff in the litigation and an abuse against judicial economy.

Therefore, based on the foregoing reasons, the Defendant's request to strike should be denied. Defendant has failed to provide any legal reason, other than to make a broad statement that the references amount to statements of opinion, improper factual and legal conclusions.  However, Rule 12(f) provides that "redundant, immaterial, impertinent, or scandalous matter" may be stricken from any pleading and Defendant has not provided any legal basis that said references are redundant, immaterial, impertinent or scandalous.  Further, they have failed to show why their reference should be stricken because it does support the allegations.

Finally, the relevance of the request has not been supported since it is generally accepted that pleadings have limited importance in federal practice.

### III. Conclusion

Defendant's motion should be denied as the liberal pleading standard has been met by the Plaintiff.  In the alternative, if the court should grant Defendant's motion, we would ask that we be allowed to amend the complaint.

Dated:  December 23, 2009                    By:_/s/ Kimberlee A. Rode_____
                                             Kimberlee A. Rode, Attorney for
                                             Jerry Sam and Melenie Sam