WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Nicholas G. Hood, Esq., SBN 238620
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660 *(Sam/Pleadings/Reply to Opp to MTD to FAC)*
Tel: (949) 477-5050; Fax: (949) 477-9200
rfinlay@wrightlegal.net; nhood@wrightlegal.net

Attorneys for Defendants, AMERICAN HOME MORTGAGE SERVICING, INC. and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SOUNDVIEW HOME LOAN TRUST 2006-OPT3, ASSET-BACKED CERTIFICATES, SERIES 2006-OPT3

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerry Sam and Melenie Sam,<br><br>Plaintiff,<br><br>and<br><br>American Home Mortgage Servicing, Inc., Deutsche Bank National Trust Company, as Trustee for the Certificateholders of Soundview Home Loan Trust 2006-OPT3, Asset-Backed Certificates, Series 2006-OPT3 and LENDER DOE<br><br>Defendants. | Case No. CV09-02177-LKK-KJM<br>*Assigned for all purposes to the Honorable Judge Lawrence K. Karlton*<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing<br>Date: January 11, 2010<br>Time: 10:00 a.m.<br>Ctrm.: 4 |

TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY:

Defendants, AMERICAN HOME MORTGAGE SERVICING, INC. ("AHMSI") and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SOUNDVIEW HOME LOAN TRUST 2006-OPT3, ASSET-BACKED CERTIFICATES, SERIES 2006-OPT3 ("Deutsche") (collectively "Defendants"), by and through their attorneys of record, Wright, Finlay & Zak, LLP, hereby reply to Plaintiffs JERRY SAM and MELENIE SAM (collectively "Plaintiffs")'s Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") as follows:

-1-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

## I.   DISCUSSION

**A.   Ruling on a Motion To Dismiss.**

To add further clarity to the standards for ruling on a Motion to Dismiss it has been recently held that: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'"[1] A showing of plausibility requires "**more than a sheer possibility that a defendant has acted unlawfully**."[2]

**B.   The Opposition is Unpersuasive in its Attempt to Ameliorate the FAC's Defects.**

   **1.   *Plaintiffs' TILA fabrications - Notices of Right to Cancel.***

An argument in the Motion is that the FAC's TILA claims are defective, in part, because Plaintiffs each executed and acknowledged the receipt of two (2) completed copies of the Notice of Right to Cancel, which is attached as Exhibit "1" to the Motion. Although Plaintiffs' Opposition admits that this creates a rebuttable presumption of TILA compliance under 15 U.S.C. § 1635(c), the *Opposition contends* that the Notices were "filled in by someone else after the Plaintiff (sic) executed the document." (Opposition at pg. 4:4-6.) Yet, this contention does NOT appear in the FAC.

In fact, all that is essentially alleged in the FAC, as opposed to the improper attempt to plead in the Opposition, is that "Proffer Financial violated TILA by failing to provide Plaintiff (sic) with two copies each of their Notice of Right to Cancel on each loan" and that "the only copies [Plaintiffs] have received are the ones provided them by the closer *after signing* the closing documents." (FAC ¶ ¶ 31, 48.) These allegations, however, do not clearly address the fact that Plaintiffs each singed a Notice of Right to Cancel, whereby they both acknowledged the receipt of the same in compliance with TILA.[3]

   **2.   *TILA Liability does not exist as to AHMSI, the admitted loan servicer.***

To start, Plaintiffs ADMIT that loan servicers are not liable under TILA, but that AHMSI, the admitted loan servicer, is liable under the common law theories of agency. (Opposition pps. 7:20-25 and 8:1-6.) This, however, is meritless.

---

[1] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp.*, supra. (Emphasis added.)
[2] *Id.* (Emphasis added.)
[3] See *Anderson v. Countrywide Financial*, 2009 WL 3368444 at * 2-3 (E.D.Cal., Oct. 16, 2009); and *Garza v. American Home Mort.*, 2009 WL 1139594 at *3 (E.D.Cal., April 28, 2009).

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

First, TILA <u>ONLY</u> provides liability for a loan's "creditor", which is defined, by 15 U.S.C. § 1602(f), as persons who regularly extend credit or the persons to whom the subject debt is initially payable on the face of the evidence of indebtedness, and/or the "creditor's assignee(s)".[4] 15 U.S.C. § 1641(f)(1) even highlights the fact that TILA recognizes a distinction between "creditors/assignees" and loan servicers, by asserting that a loan servicer is **not** an assignee unless it was or is the owner of the loan. Again, Plaintiffs admit that AHMSI is neither a "Creditor" nor "Assignee" in this matter.

Second, Plaintiffs' back-door approach to create TILA liability based on common-law agency principles fails. Initially, Plaintiffs' citation of the Restatement of Agency defeats their own arguments. For example, on page 8 of the Opposition is the citation to Restatement of Agency § 6.07 for the principle that a third party may demand reasonable proof of the identity of the agent's principal. However, that Restatement section is <u>expressly limited</u> to those situations "[w]hen an agent **made a contract on behalf of an undisclosed principal...**"[5] Here, AHMSI did **not** enter into *any* contract with Plaintiffs, let alone on behalf of anyone else, nor do Plaintiffs allege as much. In fact, the only contracts at issue are the subject Promissory Note and its Deed of Trust, which were **between Plaintiffs and Proffer Financial**. (See FAC, Exhibit "A".)

As another example, page 9 of the Opposition cites to Restatement of Agency § 2.05, but again, that section refers to "transactions" made on behalf of others, and it only applies to the liability of the *principal*, not the agent. Similarly, the citation to Restatement of Agency § 2.06, also on page 8 of the Opposition, only applies to the liability of the *principal* for the acts of the agent, not the agent itself. Thus, Plaintiffs' recitation of the Restatement of Agency does nothing more than prove Defendants' argument that AHMSI is <u>not</u> liable under common law agency principles for the purported TILA violations.

Moreover, Plaintiffs have provided **no** authority to demonstrate that common law agency principles apply to TILA so as to **extend** TILA liability beyond its plain language. Again, TILA liability is exclusively and plainly confined to 15 U.S.C. §§ 1635, 1640 and 1641,

---

[4] See 15 U.S.C. §§ 1635, 1640 & 1641.
[5] Opposition pg. 8:15-25, citing Restatement of Agency § 6.07(3)(c).

-3-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

which solely refer to "creditors"/"assignees" and expressly distinguishes loan "servicers". Further, the legislature understood the concept of agency when enacting TILA, which can be found in 15 U.S.C. § 1602(n) ("...any person who issues a credit card, or the *agent of such person*..."(emphasis added)), but consciously chose **not** to include "agents" within the definitions of "creditors" and "assignees".[6]

Quite simply, loan servicers, such as AHMSI, are **not** liable for TILA claims.[7] This includes the **nonexistence** of liability under 15 U.S.C. § 1641(f)(2) for a loan servicer's alleged failure to disclose the identity of the "creditor" or "assignee", as discussed in more detail below.

### 3.  *Plaintiffs' Purported Rescission Notice is Invalid and Untimely.*

The Opposition next argues that the Plaintiffs' "QWR" letter contained a valid request for rescission of the loan under TILA. In support of this contention and in response to the Motion's arguments, Plaintiffs argue that the "QWR's" *ultimatum* of demanding a loan modification or else the loan will be rescinded under TILA, was an attempt to "mitigate damages". Yet, this is nothing more than a futile attempt to circumvent the fact that a valid TILA rescission request was NOT made in the "QWR". Nowhere within the text of TILA does it require a borrower to "mitigate damages" by requesting a loan modification prior to requesting rescission due to a TILA violation. This is because such a notion is illogical.

Arguably, only the borrower is "damaged" when TILA is violated. As such, the legislature permits a borrower, when an actual TILA violation occurs and within 3 years of consummation of the loan, to be placed in the same position it had been in prior to entering into the loan.[8] Thus, there is no need to "mitigate damages" because a borrower is made 'whole' through TILA rescission. Plaintiffs, however, argue that "mitigation" was the "right thing to do" in order to obfuscate the obvious intent of the "QWR": to demand and obtain a loan modification. Not only is this mitigation argument a tangent, but it is not the law.

---

[6] See 15 U.S.C. §§ 1602(f), 1641.
[7] *Bashi v. Wells Fargo Home Mortg., Inc.*, 2009 WL 3388629 at *3 (E.D.Mich., October 15, 2009), citing 15 U.S.C. § 1641(f)(1) & (2) ("A 'servicer' is not generally liable for recision (sic) or other damages."); *Payton v. New Century Mortg. Corp.*, 2003 WL 22349118 at * 5 (N.D.Ill.,Oct. 14, 2003) ("TILA expressly disclaims any liability for mere servicers "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1)."); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913, 917-918 (N.D.Ill., 2008); *Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 105 (D.S.C., 2009).
[8] See 15 U.S.C. § 1635.

-4-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

As the Opposition admits, language such as "I WISH TO CANCEL", alone and unconditioned by other terms and ultimatums, is what is necessary to rescind a loan under TILA. (Opposition pg. 10:13-25.) Quite simply, in order to effect TILA rescission, when authorized, an **unequivocal, unconditional** and **affirmative** statement that "I WISH TO CANCEL" must be made by the borrower to the "creditor".[9] But, even as the Opposition concedes, the attempt to rescind by Plaintiffs, which was otherwise unavailable as discussed above, was expressly *conditioned* on the following ultimatum:

> "**If** you reject our settlement or we do not come to a resolution…Mr. and Mrs. Sam hereby rescinds (sic)…"[10]

This is NOT a valid rescission. The Opposition recites multiple definitions from Black Law's Dictionary as to the meaning of "wish", but they only confirm that Plaintiffs did not "wish" to rescind the loan. Had Plaintiffs "wished" to rescind the loan, they would have so stated; but, instead, they demand a **loan modification** and *conditionally* threaten rescission if it is not granted. This offends the plain language of TILA.

To reiterate the Motion, pursuant to the express provisions of TILA, upon mailing a proper and timely notice to cancel, the loan and its deed of trust **automatically** become void.[11] Even the Opposition admits that "the moment the notice to cancel was originally sent, in effect, the 'patient died on the table'" (i.e., the loan and deed of trust automatically became void). (Opposition pg. 11:22-23.) Therefore, following Plaintiffs' own admission and simple logic, if the "QWR" letter was an effective notice of rescission – which it is not - then the loan and Deed of Trust would *automatically* be void upon mailing, leaving no ability for anyone to investigate a modification of the Loan as requested in the "QWR" letter.[12] Thus, **Plaintiffs *wished* to retain the Loan and have it modified, nothing more**; the Opposition believes that this is a contradiction, but the clear language speaks for itself.

The Opposition goes on to quote *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003) for several sound-bites that, again, are taken out of context. Specifically, Plaintiffs

---

[9] See 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(a)(2), Appendix H to Part 226- Closed-End Credit Transactions at Model Form H-8.
[10] FAC, Exhibit "B" at pg. 2.
[11] See 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(a)(2), (d).
[12] 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(a)(2), (d).

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

quote *Yamamoto's* holding regarding the ability to *condition* TILA rescission, in attempt to claim Plaintiffs were justified in conditioning their rescission notice on the granting of a loan modification. However, the "conditioning" of TILA rescission that *Yamamoto* was referring to dealt with *conditioning* the effectuation of rescission on the borrower's ability and willingness to **tender** the principal balance of the loan.[13] Thus, Plaintiffs' contortion of the holding of *Yamamoto* in attempt to justify the invalid rescission ultimatum in the "QWR" is entirely misleading and improper.

Additionally, Plaintiffs have purely failed to provide any opposition to the fact that Plaintiffs' *judicially admitted* before the Bankruptcy Court on April 24, 2009 – some two months after the so-called notice of rescission and a month *after* the **TILA statute of repose** expired- that the loan was valid, viable and not rescinded, when they stated in their Bankruptcy Petition **their intent to reaffirm the Note's debt.**[14] Thus, Defendants rely on the arguments presented as to this issue in the Motion.

Lastly, Plaintiffs' Opposition believes that "equitable tolling" applies in the context of TILA rescission. However, TILA rescission is a **statute of repose**, not a statute of limitations that can be equitably be tolled. "The expiration for the right of rescission cannot be tolled, because '§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three year limitation period.'"[15] As a result, Plaintiffs **did not timely rescind** within 3 years of consummation of the loan, or before March 6, 2009, as required by 15 U.S.C. § 1635(f); which is of course assuming, arguendo, a TILA violation has occurred to permit the extended TILA rescission period.

---

[13] See *Yamamoto*, 329 F.3d at 1171, 1173 ("'a trial judge ha[s] the discretion to condition rescission on tender by the borrower'…As we explained, whether a decree of rescission should be conditional depends upon 'the equities present….. ") and ("As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what.)

[14] RJN, Exhibit "4".

[15] *Reynoso v. Paul Financial, LLC*, 2009 WL 3833298 at * 4 (N.D.Cal., Nov. 16, 2009) (emphasis added), quoting *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir.2002); see *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998) ( "Section 1635(f) ... talks not of a suit's commencement but of a right's duration ...."); *D'Onofrio*

-6-

---

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

### 4. *TILA Tender.*

Plaintiffs' Opposition further argues that their tender of the principal balance of the loan, per the express terms of TILA, is not required because "defendants" have not *agreed* to rescind the loan. Contrary to this contention, "defendants" cannot "agree" to rescind: either TILA rescission is effected and proper or it is not, and the Opposition recites TILA's provisions to this effect. However, the issue becomes, as is here, whether a borrower is entitled to an extended rescission period due to an actual TILA violation. This is where TILA provides that "[t]he procedures prescribed by this subsection [15 U.S.C. §1635(b), including tender] shall apply **except when otherwise ordered by a court**." (Emphasis Added.) Again, this caveat prevents borrowers from improperly rescinding under TILA's extended period, when such relief is unavailable. As such, the equities work such that the borrower is not unjustly enriched in the event it is determined that a TILA violation did occur and the extended rescission period was available. Otherwise, nearly every homeowner in America with a refinance loan could avoid their contractual obligations, whether warranted or not.

The Opposition is rife with sound-bites from cases (many of which are not reported or found on a Computer-based system) and TILA statutes regarding the issue of tender upon rescission under TILA. Yet, none of the authorities cited in the Opposition contradict the fact that the Court can condition rescission upon tender of the principal balance of the loan. The express statutory authority of modifying the rescission process accounts for cases such as the present where there is a dispute whether TILA rescission is available in the first place. Further, it permits a safety valve to avoid borrowers from obtaining their home for free, which is quite simply inequitable given the technical violations of TILA. Again, a borrower is "…clearly not entitled to a modification of the existing loan terms…[r]escission is not a means to create highly favorable loan terms for the party seeking rescission."[16] The equitable goal of rescission under TILA is to <u>restore the parties to the status quo ante</u>.[17] It is ironic that the Opposition's prefatory statement claims Plaintiffs are not "attempting to extinguish their debt and keep their home free

---

*v. United States Bank*, No. 09-3701, 2009 U.S. Dist. LEXIS 95057, *4 (N.D. Cal. Oct 13, 2009) ("The three-year statute of limitation for TILA rescission claims is absolute; it cannot be tolled.").
[16] *Edelman v. Bank of America Corp.*, 2009 WL 1285858, *2 (C.D. Cal. 2009), citing *Nichols v. Greenpoint Mortg. Funding Inc.*, 2008 WL 3891126, *5 (C.D. Cal. 2008).

-7-

and clear...[t]hat would be inequitable...", but that is exactly what the Opposition is claiming in part. For example, Plaintiffs claim Defendants have "unclean hands" and thus, cannot request equity through tender. Yet, it has yet to be demonstrated, as mentioned above, that Plaintiffs were entitled to the extended rescission period. This is why the statute permits equity, as explained in *Yamamoto*.[18] No case to date has denied tender to a lender based on "unclean hands" for not recognizing a rescission. This is because it would be nothing short of unjust enrichment for a borrower to keep his house for free.

As for pleading tender, *Farmer v. Countrywide Financial Corp.*, 2009 WL 1530973 (C.D. Cal. 2009) has held that: "[t]his Court embraces the policy that a plaintiff cannot state a claim for rescission under TILA without at least alleging that she is financially capable of returning the principal of the loan."[19] Logically, if a Plaintiff is unable to presently tender, then there is no reason to continue litigation, as rescission cannot be effected as a matter of law. TILA was intended to prevent borrowers from continuing to be obligated under refinance loans, the terms of which were not fully disclosed at the time of execution; not to give out free houses. Thus, as is the case here, Plaintiffs conclusively claim they are "ready, willing and able to tender" on the one hand, but then admit their ability to tender was purportedly "harmed" by Defendants. This is insufficient to indicate tender. Plaintiffs must tender and TILA rescission is not an avenue to gain a more favorable repayment plan under the Loan; regardless of their attempt blame Defendants for their inability to tender.

Further, the Opposition attempts to shift the burden of proof on "defendants" by stating that "Defendants have no factual evidence to support that Plaintiff was unprepared to tender if they agreed." (Opposition pg. 12:7-9.) While this is altogether improper, it is more appropriate to state that Plaintiffs have never alleged any facts to indicate that they presently can tender in order to effectuate their request for rescission.

---

[17] *Am. Mortgage Network v. Shelton*, 486 F.3d 815, 821 (4th Cir.2007).
[18] See the Opposition's references to *Yamamoto*.
[19] See also *Del Valle v. Mortg. Bank of California*, 2009 WL 3786061, at *8 (E.D.Cal. Nov.10, 2009); *Garcia v. Wachovia Mortg. Corp.*, 2009 WL 3837621, at *3 (C.D.Cal. Oct.14, 2009); *ING Bank v. Korn*, 2009 WL 1455488 * 1 (W.D.Wash., May 22, 2009); *Garza v. American Home Mortg.*, 2009 WL 188604, at *5 (E.D.Cal. Jan.27,

-8-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

### 5. *15 U.S.C. § 1641(f) Was Not Violated by AHMSI.*

The Opposition claims that it is confused as to why AHMSI is not liable under TILA, but, as discussed above, TILA liability does NOT apply to a loan servicer, even under 15 U.S.C. § 1641(f)(2). Again, the only applicable sections of TILA providing for liability and/or relief can be found in 15 U.S.C. §§ 1635, 1640 and 1641, which only apply liability against "creditors" and "assignees". Not a single code provision within TILA provides for any relief against a loan servicer (unless the loan servicer owns or has owned the loan),[20] let alone against a loan servicer for a purported violation of 15 U.S.C. § 1641(f)(2).

The Opposition cites to the holding of *Ramos v. Citimortgage, Inc.*, No. CIV. 08-02250 WBS KJM (E.D.Cal. Jan. 7, 2009), but as the Opposition's own quotation of the holding reveals, the loan servicer in that action fell within the exception mentioned above (e.g., the loan servicer previously owned the loan making it an "assignee" under 15 U.S.C. § 1641(f)). Here, AHMSI was never the owner of the loan, and Plaintiffs admit to this fact. Therefore, as there is simply **no** provision whatsoever within the provisions TILA to impose liability on a loan servicer, Plaintiffs' claim fails.

Further, it is clear, since 15 U.S.C. § 1641(f)(2) does NOT impose a time limit upon which to provide the name of the master servicer OR the owner of the obligation, that no liability was to be created under that section. From the plain language of the code section, AHMSI has not violated that section as there is no time limit with which it was required to respond. Further, Plaintiffs simply cannot claim that they have since been advised of the master servicer of the loan. Contrary to Plaintiffs contention, disclosure of the owner of the loan is NOT mandatory under TILA so long as the identity of the master servicer has been provided.

Further, to the extent that Plaintiffs continue to claim Public Law 111-22 was violated, Plaintiffs do not provide a rebuttal argument to the fact that such law was not effective until May 20, 2009,[21] or approximately four (4) months *after* the "QWR" letter was sent, and that the law is *not* retroactive. Also, and again, Public Law 111-22 only requires disclosure within "30

---

2009) (granting motion to dismiss TILA rescission claim in light of complaint's failure to allege ability to tender, since "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received").
[20] 15 U.S.C. § 1641(f)(1).
[21] FAC ¶ 44.

-9-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

days after the date on which a mortgage loan is **sold or otherwise transferred or assigned** to a third party..." which does not apply to the facts here.

Lastly, while Plaintiffs are aware of the identities of both the loan servicer and the owner of the loan obligation, it is quite unclear how Plaintiffs have been damaged in any way by these purported omissions. As such, Plaintiffs' claims are invalid.

### 6. *No Claim For TILA Damages is Available.*

As discussed above and in the Motion, Plaintiffs have not pled a valid TILA claim. Therefore, Plaintiffs are not entitled to monetary damages under TILA. While Plaintiffs believe the law is misstated, such is not the case because TILA clearly requires a violation of its provisions prior to the imposition of monetary damages.[22]

Alternatively, the Motion argued that any action under TILA for monetary damages due to alleged non-disclosures **in the origination of the loan** must be brought within one-year from the date of the occurrence of the violation.[23] However, as the Opposition concedes that the FAC does not assert a TILA damages claim based on non-disclosures in the origination of the loan, but only for the purported failure to rescind the loan, such an argument is moot. However, Defendants assert that Plaintiffs are unable to amend to include a damages claim based on non-disclosures in the origination of the loan because such a claim is untimely.

### 7. *The RESPA Claim is Defective.*

The Opposition is unpersuasive as to the fact that the "QWR" is NOT a Qualified Written Request under the terms of RESPA. The Opposition in no way addresses the fact that a valid Qualified Written Request under RESPA can ONLY inquire into information solely relating to the **SERVICING OF THE LOAN**.[24] Again, "Servicing" is defined under RESPA as "receiving any scheduled periodic payments from a Borrower pursuant to the terms of any loan, including amounts for escrow accounts...and making the payments of principal and interest and such other payments with respect to the amounts received from the Borrower as may be required pursuant to the terms of the loan."[25] A letter disputing the "validity of the loan and not

---

[22] See 15 U.S.C. §§ 1635(g), 1640.
[23] 15 U.S.C. § 1640(e).
[24] 12 U.S.C. Section 2605(e)(1)(B) and Regulation X Section 3500.21(e)(2).
[25] 12 U.S.C. § 2605(6)(i)(3).

-10-

its servicing" is not a valid Qualified Written Request.[26] As the FAC's own Exhibit "B" (the "QWR" letter) shows, Plaintiffs did NOT request *any* information regarding the **SERVICING OF THE LOAN.** The "QWR" merely challenged the validity of the loan given the purported non-disclosure of the Notice of Right to Cancel. As set forth above, such is NOT a RESPA Qualified Written Request. Even the Opposition at pg. 25:7-8 contends that the "QWR" merely wanted to the "know who truly holds" the loan, but, again, this has nothing to do with loan servicing (i.e., it is not related to periodic payments, escrow accounts, principal and interest terms, or other payments). Plaintiffs attach the "QWR" to the FAC, thus, its contents control the conclusive contentions in the FAC.

The Opposition claims that the above is a "narrow interpretation" of "servicing", but this is simply the definition of "Servicing" provided by RESPA in 12 U.S.C. § 2605(6)(i)(3). Quite simply, Plaintiffs' "QWR" letter is not encompassed within the plain language of RESPA. Plaintiffs cite to *McLean v. GMAC Mortgage Corp.*, No. 06-22795-CIV-O'SULLIVAN (S.D.Fla. May 5, 2008), but that case dealt with the **loan servicer's response** to a Qualified Written Response, not whether there was a Qualified Written Response in accordance with RESPA to begin with. Thus, *McLean* provides no credence to Plaintiffs' invalid argument.

The Opposition cites to the unreported case of *Lal v. American Home Mortgage Servicing*, Case No. 2:09-CV-01585-MCE-DAD (E.D.Cal., Sept. 24, 2009), but Plaintiff provides no argument to rebut the Eastern District's *October 21, 2009* holding in *Pickard v. WMC Mortgage Corporation*, 2009 WL 3416134 at * 8 (E.D. Cal. Oct. 21, 2009), dismissing a RESPA claim since "[e]ven if defendants failed to respond to a QWR, such failure alone does not substantiate a RESPA claim in that the FAC fails to allege plaintiffs' pecuniary loss to support a RESPA violation."[27] The FAC at paragraph 110 merely states Plaintiffs "are entitled...[to] actual damages....", but there are no allegations as to how and in what way Plaintiffs were actually damaged by any failure to respond to the "QWR", even if it did comply

---

[26] *Keen v. American Home Mortgage Servicing, Inc.*, 2009 WL 3380454, *7 (E.D. Cal. Oct. 21, 2009), quoting *Consumer Solutions REO, LLC v. Hillery*, 2009 WL 2711264 (N.D. Cal. Aug. 26, 2009); *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 900-01 (N.D. Ill. 2000) (the alleged letter was not a valid QWR because it involved "a forged deed, and irregularities with respect to recording...but no claim with respect to improper servicing".)

-11-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

with RESPA- which it did not. Such an allegation is pure **speculation** and must be disregarded. Moreover, there is absolutely no allegation that AHMSI is engaging in a pattern or practice of violating RESPA by which Plaintiffs would be entitled to statutory damages.[28]

As such, Plaintiffs' RESPA claim fails.

### 8. *The RFDCPA Claim Fails.*

The Opposition also cites numerous cases regarding the RFDCPA and certain conduct that violates its provisions. However, a distinction can be made between those cases and the present pleading: here, there is a complete lack of facts indicating plausibility of the claim beyond *sheer possibility*. The face of the FAC does not *factually* allege that Defendants are, in fact, "debt collectors" or that the RFDCPA was actually violated. The FAC meagerly contends AHMSI contacted Plaintiffs with phone calls and written letters after Plaintiffs requested all communications to cease. (FAC ¶¶ 115-116.) This provides absolutely no facts to demonstrate beyond a *sheer possibility* that RFDCPA was violated.

Moreover, the Opposition does NOT refute or address the Motion's argument that the RFDCPA incorporates the Federal Fair Debt Collection Act's 15 U.S.C. § 1692c(c), which **permits communication even after being requested to cease** contact. Neither the FAC nor Opposition provides a contention that the purported communications were exempt under 15 U.S.C. § 1692c(c). Further, the cases of *Yulaeva v. Greenpoint Mortgage Funding, Inc.*, 2009 WL 2990393, at *15 (E.D.Cal., Sept. 9, 2009) and *Ross v. Wells Fargo Bank*, U.S. Dist. Court, 2:09-cv-00319 (E.D.Cal., may 7, 2009), as cited in the Opposition, deal with credit reporting and threats to increase the debt, respectively, which are not alleged to be the case in the FAC. Instead, it is entirely unclear when the alleged communications occurred and whether they are otherwise exempt from the restrictions of the RFDCPA to cease communication. On its face, the FAC fails to state sufficient facts to state a valid claim.

Moreover, Plaintiffs have absolutely failed to address the Eastern District's holding in *Champlaie v. BAC Home Loans Servicing, LP*, 2009 WL 3429622 * 18 (E.D. Cal. Oct. 22,

---

[27] See *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J. 2006) ("However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.")
[28] 12 U.S.C. § 2605(f)(1)(B).

-12-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

2009): "Foreclosure on a property as security on a debt is not debt collection activity encompassed by the [RFDCPA]."[29] Thus, Plaintiffs have failed to state a claim under the RFDCPA.

### 9. *No Valid UCL Claim has been stated.*

There is simply no dispute that the UCL claim is dependent on the validity of the FAC's claims for TILA, RESPA, and RFDCPA. Thus, it is obvious that this UCL claim's validity fatally depends on the fate of its antecedent substantive claims.[30] As set forth above, and in the Motion, the antecedent claims fails and therefore, so too must the UCL claim.

Nevertheless, even if the antecedent claims were valid, a UCL claim has not been asserted. The Opposition does not address the fact that the FAC has failed to adequately allege standing. As asserted in the Motion, a plaintiff "must show that (1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising."[31] The FAC, however, does not factually plead, above speculation, either actual injury or causation.

Regardless, "defendants" alleged acts are not distinguished. Throughout the UCL claim are references to "defendants", but this is improper as there is no vicarious liability permitted under the UCL; rather, a defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices.[32] In addition and aside from a lack of particularity, "[a] court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'"[33] Thus, the items discussed above, such as no liability imposed under TILA against a loan servicer, cannot be recast as UCL violations.

Also, the Opposition claims that the Motion claims a pattern of behavior or course of conduct must be present to state a UCL claim, but no such contention is found in the Motion. What is found in the Motion, however and unopposed, is that fact that the allegations that AHMSI "continually engaged in harassment", "invaded the privacy of Plaintiff" and "reported

---

[29]
[30] *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).
[31] *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).
[32] *Emery v. Visa Internat. Service Ass'n*, 95 Cal.App.4th 952, 960 (2002).

negative credit", are unsupported by fact and are mere speculations that do not demonstrate plausibility beyond sheer possibility.

**10.   *The Slander Claims Are Invalid.***

The Opposition does not address the arguments in the Motion. All that is provided is a recitation of 12 U.S.C. § 2605(e). This truly does not address the arguments in the Motion that the elements of the tort of defamation (e.g., (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage[34]) have not been adequately pled in the FAC. Nor is there a rebuttal to the fact that "[a]ll averments of defamation must be plead with **particularity**",[35] but that the FAC is merely conclusory, with vague allegations. Further, the Opposition does not address the FAC's failure to provide "[t]he words constituting a libel or slander...specifically...if not plead verbatim"[36] nor the fact that the FAC does not adequately the time, place, content, speaker, and listener of the alleged defamatory matter.[37]

Likewise, the Opposition absolutely avoids the Motion's arguments regarding the recording of foreclosure related documents in the slander of title claim. To avoid redundancy, Defendants will reiterate by this reference the arguments in their Motion as to those issues, which are unopposed. As a result, the defamation claims absolutely fail.

**11.   *The Breach of Covenant of Good Faith and Fair Dealing Claim Fails.***

Similar to the rest of the Opposition, Plaintiffs cite to several cases regarding the issue of the Covenant of Good Faith and Fair Dealing, but fail to indicate how those cases salvage the defective FAC claim. In the FAC, Plaintiffs claim that the purported failures to disclose the

---

[33] *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).
[34] Civil Code § § 45, 46; Rest.2d, Torts §§558, 559; see *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal.App.4th 798, 809 (2002) (there can be no defamation recover without a falsehood).
[35] *Wiggins v. District Cablevision, Inc.*, 853 F.Supp. 484, 494 (D.D.C. 1994), citing *Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C. 1991); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Vol. 5, § 1309 (1990) ("In libel and slander suits, the **time and place of the publication should be specifically stated** in the complaint.").
[36] *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D. Cal. 1997), quoting *Chabra v. S. Monterey County Memorial Hospital, Inc.*, 1994 WL 564566, *6 (N.D.Cal. 1994); see *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979), quoted by *Hoffman*, 777 F.Supp. at 1005 ("...the use of In haec verba pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings.")
[37] See *Hoffman*, 777 F.Supp. at 1005; *Ridgewells Caterers v. Nelson*, 688 F.Supp. 760, 763 (D.D.C.1988).

-14-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

1  Notice of Right to Cancel and respond to the "QWR" letter were breaches of the implied
2  covenant. But as set forth in the Motion, "[b]orrower[s] and guarantors of commercial loan[s]
3  [can] not maintain tort cause[s] of action against bank[s] alleging breach of covenant of good
4  faith and fair dealing" because these "contracting parties do not have fiduciary
5  characteristics."[38]

6  In addition, the Motion asserts, unopposed, that the implied covenant is only imposed to
7  assure compliance with the *express terms* **of the contract**, and cannot be extended to create
8  obligations not contemplated by the contract.[39] "[T]he implied covenant will only be recognized
9  to further the contract's purpose; it will not be read into a contract to prohibit a party from doing
10 that which is expressly permitted by the agreement itself."[40] As stated in the Motion, Plaintiffs'
11 claims are based on obligations, if any, that arise from statutes (e.g. TILA and RESPA
12 requirements), **not the *express terms* of the Loan.**[41] Thus, this claim fails.

### D. The Motion to Strike.

14 *FRCP*, Rule 12(f) states: "The court may strike from a pleading an insufficient defense
15 or any redundant, immaterial, impertinent, or scandalous matter." The FAC's Exhibit "F" does
16 nothing more than prejudicially imply that Defendants have committed wrongdoing, and as
17 such they 'must have committed wrongdoing here.' The article is simply irrelevant to the facts
18 of this case, and even if the article is factually correct – which is absolutely denied – there is no
19 direct accusation in the article that Defendants are among the purported wrongdoers.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

---

[38] *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 728 (1989) (emphasis added).
[39] *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094 (2004); Witkin, *Summary of California Law*, Vol. 1 Contracts § 802 p. 895 (West 10th ed. 2005)
[40] *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120 (2008).

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

## II.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Honorable Court grant their Motion to Dismiss without leave to amend.

                                      Respectfully submitted,
                                      WRIGHT, FINLAY & ZAK, LLP

Dated: January 4, 2010        By:    */s/ Nicholas G. Hood*
                                                T. Robert Finlay, Esq.,
                                                Nicholas G. Hood, Esq.,
                                                Attorneys for Defendants, AMERICAN HOME MORTGAGE SERVICING, INC. and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SOUNDVIEW HOME LOAN TRUST 2006-OPT, ASSET BACKED CERTIFICATES, SERIES 2006-OPT

---

[41] See *Edelman v. Bank of America Corp.*, 2009 WL 1285858 *3 (C.D. Cal. April 17, 2009) ("The duty to provide a notice of cancellation does not arise from the parties' agreement. **Rather, it arises from federal statute…**" - **in dismissing a GFFD claim based on TILA violations**.) (Emphasis added.)

-16-

**REPLY TO OPPOSITION TO MOTIONS TO DISMISS & TO STRIKE**

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On January 4, 2010, I served the within REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT on all interested parties in this action as follows:

[X]   by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Kimberlee A. Rode
Law Offices of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA 95826
**Attorney for Plaintiff**

[ X ]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ / ]   (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission.

[X]   (BY ELECTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 4, 2010, at Newport Beach, California.

*[signature]*
Gretchen Grant

---

1

PROOF OF SERVICE